MINNIE MAY MILLER et al. Appellees, vs. JACOB MILLER et al. Appellants.

Opinion filed October 26, 1912.

1. APPEALS AND ERRORS—effect where testimony in a certificate of evidence is stricken out by the judge before signing. The fact that alleged testimony appearing in the certificate of evidence was stricken out by the judge before signing the certificate, must, on appeal, be taken as conclusive that such alleged testimony was not heard in the presence of the jury.

2. SAME—Supreme Court cannot consider that testimony not in certificate of evidence was heard. The Supreme Court cannot, upon the mere suggestion of counsel, consider that as having been heard in the court below which does not appear from the certificate of the chancellor to have been presented.

3. SAME—the court is not bound to give repetitions of instructions. It is not error for the court to refuse instructions the substance of which has been given in other instructions of the series.

4. SAME—when verdict in contested will case will not be disturbed. The verdict of the jury in a contested will case, under the statute, has the force and effect of a verdict in a suit at law, and where the evidence is sharply conflicting and so evenly balanced that the trial court would have been warranted in sustaining a verdict for either party, the Supreme Court will not set aside the verdict returned, as being unwarranted.

APPEAL from the Circuit Court of DeWitt county; the Hon. W. G. COCHRAN, Judge, presiding.

L. O. WILLIAMS, and JOHN FULLER, for appellants.

HERRICK & HERRICK, and STONE & GRAY, for appellees.

Mr. JUSTICE COOKE delivered the opinion of the court:

The appellees, heirs-at-law of George Miller, deceased, filed their bill in the circuit court of DeWitt county to set aside the last will and testament of the deceased on the ground that he lacked testamentary capacity at the time of the execution of the purported will and the two codicils thereto. Upon the trial the jury made special findings that the testator was not of sound mind on the dates of the execution of the purported will and each of the codicils, and returned a general verdict that the paper offered in evidence was not the last will and testament and codicils of George Miller. Motion for a new trial was overruled and a decree entered setting aside the will and codicils and the probate thereof. Two of the defendants, Jacob Miller and Manford Miller, sons of the testator and the chief beneficiaries under the will, have perfected this appeal.

George Miller, who for many years had been a resident of DeWitt county, died February 27, 1910, leaving surviving him a widow, six children and two grandchildren as his only heirs-at-law. The purported will was executed on April 23, 1898, and devised to his wife, so long as she should remain his widow, forty-five acres of land. To his son Manford Miller he devised a life estate in twenty-five acres of this tract, with the remainder to his children in fee, and to his son Jacob Miller a life estate in the remaining twenty acres of the tract, with remainder to his children. The devises to the two sons were made subject to the payment by Manford of $50 each to a brother and sister, and the payment by Jacob of $50 to another sister. The will further directed that a forty-acre tract (describing it) should be sold for the payment of testator's debts, and that

the remainder (if any) of the purchase money be divided equally among his children or their heirs. On November 20, 1900, the testator executed a codicil to this will, by which he devised to his son Jacob Miller a life estate in five acres of the forty-acre tract which he had directed to be sold by the original will, with the remainder to Jacob's children, and devised the remaining thirty-five acres of the tract equally to his other children. On March 28, 1903, he executed another codicil, by which he provided that his daughter George Frances Myers should have a life estate, only, in that portion of land devised to her by the former codicil, with the remainder in fee to her children, should any survive her, and if she should die without children, then the remainder to his sons Jacob and Manford.

Appellants urge three reasons why the decree should be reversed: First, that the court erred in admitting improper testimony; second, that instructions offered on behalf of appellants were improperly refused; and third, that the verdict of the jury was against the weight of the evidence.

In support of the first contention made, appellants assert that under a stipulation which had been entered into between the parties to the suit that the testimony heard in this cause might be considered by the court in a suit between the same parties in another action to set aside certain deeds executed by the testator and delivered to his two sons, Manford and Jacob, the court permitted testimony to be heard which was wholly incompetent and prejudicial to the appellants. The certificate of evidence does not disclose that any such evidence was heard. Testimony of the character complained of apparently was contained in the transcript tendered the chancellor to be certified, but the same has been stricken out and obliterated by drawing a pen through it. Appellants admit that this was stricken out by the chancellor before the certificate of evidence was signed, but insist that the fact that it was there at the time it was presented to him is evidence that the testimony was given

in the presence of the jury, and that this court should consider its effect upon the jury in arriving at their verdict. The contrary presumption must prevail. The fact that this pretended testimony was stricken out of the certificate of evidence before it was signed by the chancellor must be taken as conclusive proof that no such testimony was heard in the presence of the jury. If, as appellants contend, the testimony actually was heard and the court wrongfully refused to so certify, an ample remedy was at hand, and appellants should have availed themselves of their right to compel the chancellor to make a correct certificate of evidence. This court cannot, upon mere suggestion of counsel, consider that as having been heard in the court below which does not appear from the certificate of the chancellor to have been presented.

As to the second contention, it is sufficient to say that the substance of each of the refused instructions complained of was given on behalf of appellants in other instructions in the series, and it was not error for the court to refuse them.

The main contention of appellants is that the verdict and decree are against the weight of the evidence. The evidence was sharply conflicting and so evenly balanced that the court would have been warranted in sustaining a verdict for either of the parties. Under such circumstances we cannot disturb the decree. In contested will cases arising under our statute the verdict of a jury is to have the same force and effect as is given to a verdict in a case at law under a like state of facts, and when the verdict in such case is not manifestly against the weight of the evidence the court is bound by it in the same manner and to the same extent as if it were a case at law. *Calvert* v. *Carpenter,* 96 Ill. 63; *Moyer* v. *Swygart,* 125 id. 262; *Hill* v. *Bahrns,* 158 id. 314; *Smith* v. *Henline,* 174 id. 184; *Hurley* v. *Caldwell,* 244 id. 448.

While the number of witnesses produced by appellants exceeded those who testified on behalf of appellees, the evidence was fairly well balanced, as many of the witnesses testifying for appellants had but a slight acquaintance with the testator, while, on the other hand, the chief witnesses for appellees were more intimately acquainted with him. The jury had the advantage of seeing the witnesses testify and of observing their demeanor while on the stand, and if they gave credit to the testimony of the appellees' witnesses, their verdict in setting aside the will and codicils was proper.

The evidence produced on behalf of appellees disclosed that the testator at the time of his death was eighty-four years of age. During the greater part of his life he was addicted to the excessive use of alcoholic liquors and was frequently intoxicated. From a time prior to the execution of the will to the time of his death his mental condition was bad and kept growing worse. During this time he displayed marked peculiarities and his memory was very poor. On one occasion he employed a mechanic to build a crib for him on his farm and fixed a time within three days for the work to begin, then straightway forgot all about it and employed another, who was engaged in erecting the structure when the first contractor appeared at the appointed time to do the work. On another occasion he purchased a cow, fixed the day upon which he should come for her, and then forgot all about the transaction. At an auction sale in Clinton, to use the language of the witness, "he bought goods and bought goods until he got tired," and when he came to settle the bill after the sale he had no recollection of buying some of the articles which he had purchased. Other similar business transactions were detailed. As some of the witnesses expressed it, he was subject to "spells" and frequently became lost and was unable to recognize his own premises or his own home. He talked disconnectedly, changing abruptly from one subject

to another, frequently stopping in the middle of a sentence to discuss a topic entirely foreign to the conversation. He talked and mumbled to himself and often failed to recognize his acquaintances when he met them. He was unable, after repeated explanations by the circuit clerk, whose advice he sought, to understand the description of his own property, but persisted in executing deeds to land which he did not own. These and many other peculiarities were detailed by witnesses who gave it as their opinion that the testator, at the time of the execution of the will and codicils, was of unsound mind and incapable of transacting the ordinary affairs of life.

From a consideration of the whole record it is clear that the verdict of the jury was not manifestly against the weight of the evidence, and we are unable to say that the preponderance of the evidence was not in favor of appellees.

The decree of the circuit court is affirmed.

*Decree affirmed.*