---

(No. 12088.—Decree affirmed.)

Dᴏʀᴀ C. McLᴇᴀɴ, Appellee, *vs.* Jᴏʜɴ L. Bᴀʀɴᴇꜱ, Exr., Appellant.

*Opinion filed October 21, 1918.*

1. Wɪʟʟꜱ—*when an attorney may testify on question of mental capacity.* Where the mental capacity of the testatrix is attacked, an attorney who was employed by her, several years before the will was executed, to resist a petition for the appointment of a conservator, may testify to facts and circumstances coming within his observation during his acquaintance with her and may express an opinion as to her mental condition, so long as he does not testify to any communications which were privileged.

2. Sᴀᴍᴇ—*when instructions are not misleading.* Instructions in a will contest case stating that the testatrix must understand the particular business in which she is engaged and the effect of the particular instrument on her property, be able to intelligently comprehend the nature and effect of the will and its provisions and to know from its contents whether it disposes of the property as determined upon, are not likely to mislead the jury into thinking that she must understand the technical language and legal forms of the will.

APPEAL from the Circuit Court of McLean county; the Hon. SAIN WELTY, Judge, presiding.

STERLING, LIVINGSTON & WHITMORE, for appellant.

STONE & DICK, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

Dora C. McLean, the appellee, filed her bill in the circuit court of McLean county to set aside the last will and testament of her mother, Margaret H. Crumbaker, alleging lack of testamentary capacity. At the time of her death, on September 13, 1917, Mrs. Crumbaker was sixty-three years of age. The will in question was executed on May 24, 1912. The testatrix owned a homestead, consisting of a house and lot in Colfax, and a farm of 120 acres, both in McLean county. By the terms of the will appellee was devised the house and lot in fee simple and a life estate in the residue of the estate, both real and personal. The will then provided that after the death of appellee, and after the youngest child of appellee should become twenty years of age, the remainder should vest in the descendants of the testatrix. The executor was given control of the estate in which appellee was devised a life estate, with power to rent the same and collect the rents, and was directed to pay the net proceeds to appellee, who was the only child of the testatrix. The jury found that the purported will was not the last will and testament of Margaret H. Crumbaker, and a decree was entered setting the will aside. From that decree the executor has prosecuted this appeal.

Appellant contends, first, that the verdict was contrary to the evidence; second, that the court erred in admitting the testimony of an attorney; and third, that the court erred in giving certain instructions asked on behalf of the appellee.

A number of witnesses testified on both sides as to the mental condition of the testatrix, and, as is usual in cases

of this kind, the evidence was conflicting. We are of the opinion that the verdict of the jury and the decree of the court are amply supported by a preponderance of the evidence. The evidence on the part of appellee tended to prove that the testatrix had been an intelligent, capable and strong-minded business woman until the last fifteen or twenty years of her lifetime; that particularly since 1905 she had experienced a great mental and physical change; that she had become unable to, and did not, transact her business as formerly and that she had entered upon a rapid mental and physical decline. A number of the witnesses testified to various "strokes," as they expressed it, which the testatrix had suffered during the last fifteen or twenty years of her lifetime. The exact nature of these seizures does not definitely appear, but it does appear from the testimony of physicians who attended her, and others, that during that time the testatrix was an epileptic and had suffered many seizures of epilepsy. In 1915 she suffered a stroke of paralysis which rendered her entirely helpless. Her physician described her condition subsequent to that time as one of paresis and paralysis, and it is conceded that after that time she was entirely lacking in mental capacity. For some time prior to 1909 her son-in-law, the husband of appellee, acted as her attorney in fact in the transaction of her business. In 1909 he brought proceedings to have a conservator appointed for her. No trial was ever had on the petition filed in that proceeding and the petition was subsequently dismissed. At about the time this proceeding was dismissed the testatrix executed a power of attorney to her brother, who transacted all of her business for her. In 1914 her sister, Mary J. Hawthorn, was appointed her conservator. For some years prior to this appointment the testatrix had made her home with her sister in Colfax, the two constituting the family. While a number of the witnesses called on behalf of appellant testified that the testatrix was competent to transact business and did transact business with

them, it appears that on each occasion the sister, Miss Hawthorn, accompanied the testatrix and did practically all the talking for her. It was conclusively shown that for several years before the will was executed the testatrix transacted no business without the help of someone, and did not even sign checks which she gave or indorse checks and drafts which she received in payment of indebtedness due her. Two physicians who had attended her from 1908 to the time of the making of the will testified that she was not of sound mind, and one physician who attended her in 1914 also testified that she was of unsound mind.

It will not be necessary to discuss the testimony given in detail by the various witnesses. It is sufficient to say that the preponderance of the evidence given showed that the testatrix did not possess the necessary capacity to execute a will. One incident shown by witnesses on behalf of the appellant, and one which must have impressed the court and the jury, strongly supported the contention of appellee that the testatrix, at the time the will was executed, was mentally incompetent. On April 27, 1905, the testatrix loaned her daughter, the appellee, $2870 to be used in purchasing a home in the city of Bloomington, and appellee and her husband gave a mortgage on the property purchased to secure this indebtedness. By its terms this mortgage was due April 27, 1910. On that date the mortgage was extended for a period of five years. Shortly after the time of this extension appellee and her husband sold this property to Mr. and Mrs. John Coupe and removed to the State of California, where they resided until the death of the testatrix. Shortly after the purchase of this property by Mr. and Mrs. Coupe they began to make payments upon the mortgage. On April 26, 1911, they paid $443, and from time to time thereafter they made payments upon the principal and interest to the testatrix. On May 10, 1912, fourteen days before the will in question was executed, they paid Mrs. Crumbaker $697.80 to be applied on this indebtedness.

The will was drawn by a lawyer residing in Colfax. The testatrix, accompanied as usual by her sister, Miss Hawthorn, went to the office of the attorney either the day the will was executed or the day before. After they entered the office Miss Hawthorn said to the testatrix, "Now tell him what you want." The testatrix thereupon stated that she wanted a will drawn, and produced a memorandum which she held in her hand, and said, "This is the way I want it done." The attorney took the memorandum but was unable to read it. Thereupon Miss Hawthorn said, "I can read it," and took the memorandum and read it to the attorney, who, as it was being read, made notes of his own to guide him in drafting the instrument. All of the terms of the will, according to the attorney and the testimony of the man who officed with him, were read from this memorandum by Miss Hawthorn. The testatrix said nothing except to explain to the attorney that the reason she left the property the way she did was because her daughter and son-in-law did not know the value of a dollar; that she had assisted her daughter in the purchase of a home in Bloomington and had taken a mortgage upon the home for the money she put into it, and that she had afterwards released the mortgage and given it back to her daughter. Inasmuch as the mortgage had never been released and the testatrix had from time to time been receiving payments upon the same, the last payment of $697.80 having been made within fourteen days, the jury were warranted in believing from this statement testified to by both of these men that the testatrix did not comprehend and understand the scope, extent and condition of her property.

It is suggested that the non-expert witnesses called on behalf of appellee, in giving their opinion as to the mental condition and capacity of the testatrix, were permitted to apply too high a test, in that they testified, with perhaps one or two exceptions, that in their opinion the testatrix did not have the mental ability to transact ordinary busi-

ness. We have repeatedly held that this is not the proper
test to determine whether a testatrix is possessed of tes-
tamentary capacity. The witnesses, however, detailed the
facts and circumstances upon which their opinions were
based, and the jury were fully and at great length instructed
as to the proper test of testamentary capacity. The error
was therefore not prejudicial.

One witness, claimed by appellant to be incompetent,
was an attorney of the McLean county bar who had been
employed by the testatrix to resist the petition for the ap-
pointment of a conservator filed by the son-in-law in 1909.
He testified to facts and circumstances coming within his
observation during his acquaintance with the testatrix and
during his conferences with her while this petition was
pending, which qualified him to express an opinion as to
her mental condition. When he testified that in his opin-
ion she was not of sound mind it was objected that the
matters to which the witness testified were privileged. The
attorney had transacted business with the testatrix but he
did not testify to any privileged communication. He was
a competent witness and his testimony was properly admit-
ted. *Norton* v. *Clark,* 253 Ill. 557.

Appellant complains of the giving of three instructions
on behalf of appellee. By one of these instructions the
jury were told that if the testatrix was not possessed of
such mind and memory as enabled her to understand the
particular business in which she was then engaged and the
effect of that particular instrument upon her property she
was not of sound mind and memory as required by statute.
By another instruction they were told that testamentary ca-
pacity means sufficient mind and memory to deliberate and
determine for one's self upon giving the property as it is
disposed of by the alleged will, and to intelligently know
and understand from the contents of the will whether it
disposed of the property as determined upon. By another
they were told if the testatrix did not intelligently compre-

hend the nature and effect of the provisions of the will they should find the writing produced not to be her will. By the first of these instructions it is insisted the jury might, and probably did, infer that if the testatrix did not understand the provisions of the will in all its legal forms she was mentally incompetent to make a valid will, and that this instruction permitted the jury to speculate upon the ability of the testatrix to understand legal terms, and to subject her to a test beyond that which the law contemplates as the proper measure of testamentary capacity. The same contention, in effect, is made in respect to the other two instructions. Testamentary capacity means capacity to know and understand the business in which the testator is engaged when disposing of his property by a written instrument, and it is manifest that he cannot understand that business unless he has sufficient mental capacity to understand the effect of that particular instrument upon his property. (*Dillman* v. *McDanel*, 222 Ill. 276.) This does not mean, of course, that the testatrix must understand and comprehend the technical effect of all legal terms used in a will, and the jury could not have understood in this case that that was the effect of these instructions. The jury were instructed by the first instruction given that the instructions were given as a whole or series. By the twelfth instruction asked on behalf of appellant the court told the jury that a person had sufficient mind and memory if he was able to know and understand what property he had, his just relation to the natural objects of his bounty and the business in which he was engaged at the time of the making of the will, and that "the law does not require that a person must comprehend the provision of the will in all of its legal forms, but it is sufficient, under the law, if such person understands the disposition that is being made of his or her property at the time of the making of the will." The jury were repeatedly told in the instructions that the test was whether or not the testatrix had sufficient mind and memory to know

285 — 14

and understand what property she had and what disposition she was making of her property at the time she executed the writing in question. The court did not err in giving the instructions criticised by appellant.

The decree of the circuit court is supported by a preponderance of the evidence, and as there are no errors of law in the record the decree is affirmed.

*Decree affirmed.*