(No. 28570.—

CHARLES TIDHOLM, Appellant, *vs.* AMY D. TIDHOLM, Appellee.

*Opinion filed May 23, 1945—Rehearing denied September 17, 1945.*

LAMBERT KASPERS, of Chicago, for appellant.

THOMAS M. POYNTON (WILLIAM MCKINLEY, and PAUL E. PRICE, of counsel,) all of Chicago, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant seeks reversal of a judgment of the circuit court of Cook county sustaining appellee's motion for

judgment notwithstanding the verdict, denying appellant's motion for a new trial and dismissing the complaint for want of equity, in a will contest case.

Appellant's complaint was filed November 2, 1941, to set aside an instrument in writing purporting to be the last will and testament of his father, August Tidholm, dated May 14, 1938. The facts as alleged in the complaint are substantially as follows: August Tidholm, a resident of Cook county, Illinois, died November 9, 1940, leaving his son Charles, appellant, Amy D. Tidholm, his daughter, Bruce Tidholm, his son, and Lois Ewing, his daughter, as his only heirs-at-law. He left real and personal estate of the estimated value of $16,000. On May 14, 1938, he executed an instrument purporting to be his last will and testament, which was admitted to probate February 24, 1941. Letters testamentary were issued to Amy D. Tidholm. No appeal has been taken from the order of probate. Amy D. Tidholm was named in the will as beneficiary of all the estate except a $100 bequest to appellant.

It is alleged the instrument is not the last will and testament of decedent, for the reason that said August Tidholm, at the time he executed it, was of unsound mind and memory and did not have the physical and mental capacity to make a will, and did not understand the nature or extent of his property or the natural objects of his bounty. August Tidholm was 86 years old at the time the will was executed. His wife had died shortly before and the evidence shows he grieved greatly. The complaint also charges that at the time of the execution of the instrument he was under the undue influence, domination and control of his daughter, Amy D. Tidholm, which deproved him of his free agency and destroyed his freedom of will. It is charged in the complaint and admitted in the answer, that August Tidholm sustained a very close relationship with Amy D. Tidholm, reposing great confidence in her and entrusted his business and confidential

affairs into her hands. It is also charged that he readily yielded to persuasion by her; that his will was overpowered and circumvented by her; that at the time of the execution of the instrument he was suffering from the shock of having recently lost his wife; that he was an old man and had become more and more dependent upon Amy D. Tidholm, who had lived with him for many years; that he, at the time of the execution of said instrument, was completely deaf and able to read only with difficulty with the aid of a strong magnifying glass, and that he had great difficulty in getting from place to place and was very dependent upon Amy D. Tidholm to help him. It is charged that the information contained in the purported will was furnished the draftsman by Amy D. Tidholm in a written memorandum, written by her, and that the witnesses, other than the draftsman, had no opportunity to form an opinion as to the capacity of August Tidholm to execute the will; that it was not signed by the witnesses at the request of August Tidholm and was in fact the embodiment and desire of Amy D. Tidholm. Amy D. Tidholm, individually and as executrix, Bruce Tidholm and Lois Ewing were made parties defendant. The last two named defendants filed disclaimer of any interest in the estate and prayed to be, and they were, dismissed as parties to the suit.

Amy D. Tidholm individually and as executrix filed her answer in which she admitted, among other matters herein stated as facts, that the testator sustained a very close and confidential relationship with her, his daughter; that he reposed confidence in her and entrusted his business and confidential affairs into her hands, and had become more or less dependent upon her, who had lived with him all her life. She denied all other allegations of the complaint and as a further defense says that at the time of the execution of the will, although of advanced years, her father was in full possession of his mental faculties, knew the extent of his property and the objects of his bounty,

and was fully capable of transacting ordinary business and affairs, and that there was no fraud, compulsion or undue influence exercised by her or by any other person or persons to procure the execution of said will.

Appellant demanded a jury trial and the court made up the issues of fact to be tried by the jury, as follows: (1) Whether the instrument is the last will of August Tidholm; (2) whether, at the time of the execution and attestation of the writing, August Tidholm was of sound mind and memory, and (3) whether any undue influence was used by Amy D. Tidholm to procure the execution of the will.

At the close of all the evidence, appellee moved for a directed verdict in her favor. The court allowed the motion as to the question of mental capacity and withdrew that issue from the jury. The jury was instructed that the sole question before it was that of undue influence. The court also instructed the jury, at the request of appellant, to answer as a special interrogatory, whether August Tidholm was, at the time he executed the writing, under undue influence from fraudulent practices of Amy D. Tidholm. The jury did not answer the special interrogatory and returned a verdict finding the instrument is not the last will and testament of August Tidholm, deceased. Appellee's motion for judgment notwithstanding the verdict was allowed, her motion for a new trial overruled and judgment entered dismissing the suit.

The first question involved in this appeal concerns the correctness of the action of the trial court in setting aside the verdict of the jury and entering judgment or decree notwithstanding the verdict. It is well settled that a will contest is strictly a statutory and not an ordinary chancery proceeding. The cause is tried upon the issue whether the writing produced is the will of the testator. The verdict of a jury in a will contest has the same force and effect as the verdict of a jury in an action at law, (*Hunt* v.

*Vermilion County Children's Home,* 381 Ill. 29; *Voodry* v. *University of Illinois,* 251 Ill. 48,) and motions for a directed verdict or a judgment notwithstanding the verdict are governed by the same rules which govern such motions in an action at law. The only question in such a case is whether there is any evidence in the record tending to prove the allegations of the complaint. The party resisting such motions is entitled to the benefit of all the evidence favorable to him. *Hunt* v. *Vermilion County Children's Home,* 381 Ill. 29; *Ryan* v. *Deneen,* 375 Ill. 452; *Ginsberg* v. *Ginsberg,* 361 Ill. 499; *Greenelees* v. *Allen,* 341 Ill. 262.

Where the evidence, taken in its aspects most favorable to the contestant, together with all reasonable presumptions and inferences to be drawn therefrom, tends to establish the allegations of his complaint, the issue should not be withdrawn from the jury. (*Peters* v. *Peters,* 376 Ill. 237; *Ginsberg* v. *Ginsberg,* 361 Ill. 499.) So, a motion for judgment notwithstanding the verdict, under the Civil Practice Act, raises the same question of law and has the same effect as a motion for a directed verdict. Neither the trial court, nor this court on review, is permitted to weigh the evidence to determine where the preponderance lies. In other words, if the plaintiff's evidence makes out a *prima facie* case, sufficient in itself to go to the jury, the motion must be denied. (*Walaite* v. *Chicago, Rock Island and Pacific Railway Co.* 376 Ill. 59; *Froehler* v. *North American Life Ins. Co.* 374 Ill. 17.) Evidence favorable to plaintiff's case is all that can be considered on such an inquiry. That evidence has hereinbefore been referred to and is to the effect that appellee took her father from his home, where she lived with him, to the First National Bank of Englewood, where, by appointment, she and her father met an attorney. Appellee told the attorney that her father wanted to make a will. The attorney testified that after a private talk with the testator, during most

of which time appellee was standing nearby, the testator, when witness asked him to give the names and the amounts involved, asked his daughter, appellee, to put down the names, which she did, and gave them to the witness. When the witness stated that he could have the will ready the next day, appellee stated she would rather have it sooner; that he agreed to have it that afternoon and appellee and the testator appeared at his office that afternoon, where the will was executed in the presence of appellee and the witnesses. This was the substance of plaintiff's evidence on the issue of undue influence, claimed to have been exerted at the time of the making of the will. The question is whether such evidence, together with matters admitted in the answer, constitutes evidence requiring that the issue be submitted to a jury.

Where a fiduciary relation exists between the testator and a devisee who received a substantial benefit from the will, and where the testator is the dependent and the devisee the dominant party, and the testator reposes trust and confidence in the devisee, and where the will is written, or its preparation procured by that beneficiary, proof of these facts establishes *prima facie* the charge that the execution of the will was the result of undue influence exercised by that beneficiary, and this proof, standing alone and undisputed by other proof, entitles the contestant to a verdict. (*Weston* v. *Teufel,* 213 Ill. 291; *Thomas* v. *Whitney,* 186 Ill. 225; 1 Woerner on Administration, 2d, Sec. 32.) Proof of the relationship and of the fact that the beneficiary, in whom trust and confidence were reposed by the testator, prepared or procured the preparation of the will by which he profits, may or may not be a preponderance of all the evidence on that subject. When that proof is made, the presumption arises therefrom and casts upon the proponent, if he is to sustain the will, the necessity of showing that the execution of the will was the result of free deliberation on the part of the testator and

of the deliberate exercise of his judgment, and not an imposition or wrong practiced by the trusted beneficiary. (*Seavey* v. *Glass,* 315 Ill. 611; *Wunderlich* v. *Buerger,* 287 Ill. 440; *Snyder* v. *Steele,* 287 Ill. 159; *Gum* v. *Reep,* 275 Ill. 503.) This, however, does not change the general rule, which is, that upon the whole case, the burden of proof is upon the contestant to establish undue influence by the whole evidence. *Weston* v. *Teufel,* 213 Ill. 291.

In the case before us the plaintiff's proof tended to make out a *prima face* case, and it cannot be said that there was no proof of undue influence. Therefore the motion for judgment notwithstanding the verdict should have been denied, even though it might be said that, upon the entire record, the evidence may preponderate against the appellant so that the verdict in his favor cannot stand when tested by a motion for a new trial. *Walaite* v. *Chicago, Rock Island and Pacific Railway Co.* 376 Ill. 59.

The same rules of law apply in the consideration of the assignment that it was error to withdraw the issue as to mental capacity of the decedent from the jury. It is conceded that the decedent had difficulty in hearing and that his eyesight was not good, requiring at times that he use a magnifying glass to enable him to read. There is some testimony that he could not hear at all, and that to converse or communicate with him it was necessary to write out what a person wished to say to him, which he read and to which he replied orally. There is testimony that for several weeks after May 4, 1938, the date of his wife's death, he cried a great deal, was dazed and at times did not talk coherently. His doctor testified he was, at about the time the will was executed, badly shot to pieces, because he could talk of nothing but his wife, and that he was very feeble mentally and physically. This witness did not, nor did any other witness, testify to an opinion, if he had any, as to whether the decedent had mental capacity to make a will. The above is a resumé of the testimony

pertaining to lack of mental capacity of the decedent. Old age, deafness and infirmity do not of themselves constitute proof of lack of mental capacity. (*Speirer* v. *Curtis,* 312 Ill. 152; *Geiger* v. *Bardwell,* 255 Ill. 320.) Testamentary capacity, as used in these cases, means capacity to know and understand the business of disposing of his property by the will executed by him. *McLean* v. *Barnes,* 285 Ill. 203.

The evidence shows instances of testator's transacting business without aid. This and evidence hereinafter referred to tended to show mental capacity, and from an examination of all the evidence on that issue, we are of the opinion that it was not error to, at the close of all the evidence, withdraw the issue of want of mental capacity from the jury.

Our holding that the court erred in granting the motion for judgment notwithstanding the verdict, brings before us, under Rule 22 of this court and the Civil Practice Act, (Ill. Rev. Stat. 1943, chap. 110, par. 259.22, p. 2440,) the question of the correctness of the ruling of the trial court denying appellee's motion for a new trial.

The confidential relationship. between the testator and his daughter, the main beneficiary under the will, having been admitted, the question of undue influence was one which should, under the facts of this case, have gone to the jury.

The evidence concerning undue influence is that of Bruce Tidholm and Lois Ewing, half brother and half sister of appellant and appellee, and is to the effect that prior to the day he made his will, the testator, out of the presence of appellee, stated to them that as Amy had been at home all the time, had assisted him by paying taxes during depression years, had assisted financially in the education and raising of Bruce and Lois, and since he gave appellant his business when he retired, he desired to and was going to change his will, because of the death of his wife, and make Amy the beneficiary of all his

estate except $100 to Charles, appellant. Lois testified that the day before he made his will he stated he wanted either Lois or Amy to take him to the bank the next day, so he could have his will redrawn. Bruce Tidholm and his wife Audrey testified that on Sunday, the day following the making of the will, the testator visited their home, had dinner with them, and stated that he had made his will the day before and that he had given Amy all his property except $100, which he had given to Charles.

Maud A. Davis testified that she talked with the testator the day after the will was executed, and he told her he had made a will leaving everything he had to Amy; that he thought an awful lot of Amy; that she was a good girl and he was leaving what he had to her because he was afraid she was going to lose her hearing the same as he and other people in the family had, and that Bruce and Lois were young and could make their way in the world.

It is to be noted that notwithstanding the presence of appellee when her father talked to the attorney who drew the will, and her presence when the will was executed, there is no evidence of any act of appellee which indicates that she in any way exerted any influence over the testator except what her presence might produce, if any. While it is true that she wrote down the names of the family, she did so at the testator's request.

The decree is reversed and the cause remanded to the circuit court of Cook county with directions to set aside the decree entered and the order denying appellee's motion for a new trial, and that a new trial on the issue of undue influence be had, and for further proceedings not inconsistent with this opinion.

*Reversed and remanded, with directions.*