(No. 29968.—

CHARLES TIDHOLM, Appellant, *vs.* AMY D. TIDHOLM, Appellee.

*Opinion filed March 19, 1947—Rehearing denied Sept. 15, 1947.*

LAMBERT KASPERS, of Chicago, for appellant.

McKINLEY & PRICE, and FINN & FITZPATRICK (WILLIAM McKINLEY, and PAUL E. PRICE, of counsel,) all of Chicago, for appellee.

Mr. CHIEF JUSTICE GUNN delivered the opinion of the court:

This is a suit filed in the circuit court of Cook county, seeking to set aside an instrument purporting to be the last will and testament of August Tidholm, who died November 9, 1940. Appellant, Charles Tidholm, is the son of August Tidholm by his first marriage. Appellee, Amy Tidholm, is the daughter of August Tidholm, also by his first marriage. Two other children by August Tidholm's second marriage, Bruce Tidholm and Lois Ewing, were originally made defendants. Both filed disclaimers and prayed to be dismissed, which request was granted. A trial was had which resulted in a verdict for plaintiff, but the trial court entered judgment for the defendant notwithstanding the verdict. On appeal to this court, the judgment was reversed and the case remanded for a new trial on the issue of undue influence. (*Tidholm* v. *Tidholm,* 391 Ill. 19.) The case was then retried, and the jury found for the defendant. After overruling a motion for new trial, the court entered a final decree in favor of the defendant. From that decree the appellant now brings this appeal.

The will which appellant seeks to set aside was executed by August Tidholm on May 14, 1938, and was probated on February 24, 1941. It bequeaths to appellant the sum of $100, and gives all the remainder of deceased's estate to appellee, who was also named executrix. Deceased's estate, both real and personal, was estimated to be worth

$16,000. The amended complaint on which the suit was last tried alleged that at the time of making his will August Tidholm was under the undue influence, domination and control of appellee, and was deprived of his free agency and freedom of will; that appellee acquired such control over August Tidholm that he readily yielded to her persuasions and appellee was thereby able to procure the alleged execution of the will; that August Tidholm was overpowered and circumvented, and was induced to execute the instrument contrary to his deliberate judgment, reason or will; that appellee furnished to the draftsman the information from which the will was prepared; that the draftsman had no opportunity to judge the capacity of August Tidholm to make a will; and that the will was not properly witnessed. The answer of appellee admitted that she sustained a close confidential relationship with August Tidholm, but denied all allegations of wrongdoing or undue influence, and asserted the validity of the will.

Certain facts are undisputed. August Tidholm, the deceased, was 86 years of age when he executed the instrument here in question. He had previously been engaged in the mortgage and real-estate business, but retired in the latter part of 1937, or the early part of 1938. His son, the appellant, had been associated with him for a number of years prior to his retirement, and had largely taken care of the business because of his father's impaired sight and hearing. Appellee, who was never married, lived with deceased and contributed to the education of the children by his second marriage.

August Tidholm's second wife died on May 4, 1938, and he was considerably upset by that event. Shortly thereafter, on May 14, 1938, deceased arranged through his bank to meet Peter Zabello, a lawyer, and asked Zabello to draft the will in question. Appellee took deceased to meet the lawyer, and was present at the conference with him that morning and at the execution of the will in the

afternoon of the same day. Two other witnesses, in addition to Zabello, signed the will in the presence of the testator.

There is a conflict of evidence as to the extent to which August Tidholm's sight and hearing were impaired. It appears that he was rather deaf, but could hear some voices better than others, and while he was the possessor of a hearing device he did not always use it. As for his sight, there is evidence that he could read, under some light conditions, type as fine as that found in a newspaper, although he did on occasion use a magnifying glass to assist him in reading. There was no evidence to indicate that he did not comprehend what he read or heard. He was able to get around and care for himself, and after the execution of the will be traveled alone by train to Philadelphia and Michigan City.

As the only question presented is whether August Tidholm was improperly influenced and coerced in signing the instrument against his will, it is unnecessary to review all of the conflicting evidence introduced in the trial court, and this discussion will be confined to that evidence which bears on the question of undue influence. Plaintiff's evidence, which consisted largely of a transcript of the testimony of Peter Zabello given at the hearing on the probate of the will, is as follows: The day before Zabello met the deceased in the First National Bank of Englewood, appellee asked him to prepare a will for her father. When he met appellee and her father, Zabello asked Tidholm how he wanted his will arranged and Tidholm said his daughter knew all the particulars. Appellee then told him how the will was to be drawn and he suggested that he would have it ready the following day, but she said she wanted it done that day if possible. Zabello then went back to his office and drafted the will, and that afternoon deceased and appellee came up to his office, where the will was executed after deceased had read it. Appellee gave

Zabello, in writing, the names of the devisees and legatees and the amount each was to have. Zabello had no difficulty making deceased hear, and when he spoke to deceased the latter answered readily. All the witnesses were present when the will was signed.

Appellee's version of the execution of the instrument as shown by the evidence introduced by her, is slightly different. Lois Ewing and Bruce Tidholm, appellee's half sister and half brother, testified that the day before the execution of the will deceased asked Lois and appellee if one of them would take him to the bank on the following day. Lois asked appellee to take him and appellee consented. Peter Zabello, testifying in person for appellee at this trial, stated that he met deceased and appellee in the bank; that he had known deceased since 1923; that when he met deceased and appellee, he asked deceased what sort of a will he wanted prepared; that deceased told him it would be a simple one and told him the names of the beneficiaries and amounts that he intended to give each; that in order to see that the names were properly spelled, he checked the names with appellee, and she wrote them out for him; that he checked his memorandum with the names as given him by appellee and then threw away the paper which she had given him; that he specifically asked deceased whether or not he wanted to leave appellant only $100, and appellee said that was correct; that he told deceased that he did not have to leave appellant anything, but deceased said, "Let $100 stand;" that deceased asked how soon the will would be ready and he told him he could have it the following day, but deceased said he would rather have it that afternoon; that he immediately prepared the will and that afternoon deceased and appellee came back to his office where the will was executed; that he gave the will to deceased, who bent over it and looked at it very carefully, and finally signed it; that the witnesses were present when it was signed by deceased and while

each of them was signing; that he was paid by deceased for drawing the will; that deceased was a strong-willed, firm man; and that, so far as the witness was able to observe, appellee exercised no undue influence on deceased during the conference at the bank or at the time of the signing of the will.

Bruce Tidholm testified that deceased told him the day before the execution of the will that he was going to leave all his property to appellee, because she had been a good girl and was sort of alone; that deceased had given appellant the real-estate business, and Lois was married and Bruce was able to take care of himself; and that appellee was beginning to lose her hearing and he wanted to be sure she would be cared for. Clifton Tidholm, a nephew of deceased, who was called as a witness by plaintiff, testified to frequent visits in the Tidholm home, and that "the parents were acknowledged their rightful place as the head of the family; the children were dutiful and obedient; Amy [appellee] was gracious to her parents and I never saw her presume to boss or direct Cora Tidholm or August Tidholm."

Appellant says that he has made *prima facie* proof of undue influence, and cites our previous opinion in this case (*Tidholm v. Tidholm,* 391 Ill. 19,) where we said: "Where a fiduciary relation exists between the testator and a devisee who received a substantial benefit from the will, and where the testator is the dependent and the devisee the dominant party, and the testator reposes trust and confidence in the devisee, and where the will is written, or its preparation procured by that beneficiary, proof of these facts establishes *prima facie* the charge that the execution of the will was the result of undue influence exercised by that beneficiary and this proof, standing alone, and undisputed by other proof, entitles the contestant to a verdict."

It is sufficient answer to this contention to note that we further stated in our opinion that "the question of un-

due influence was one which should, under the facts of this case, have gone to the jury." The jury having found in favor of appellee, we cannot, in the present state of the record, say that such finding was contrary to the weight of the evidence. The verdict will not, therefore, be set aside. *Tidholm* v. *Tidholm,* 391 Ill. 19; *Miller* v. *Miller,* 255 Ill. 360; *Johnson* v. *Johnson,* 187 Ill. 86.

In order for undue influence to have the effect of invalidating a will the influence must be directly connected with the execution of the instrument and operate at the time it is made, and it must be directed towards the procuring of the will in favor of certain parties and must destroy the freedom of the testator's action and render the instrument more the will of another than his own. (*Challiner* v. *Smith,* 396 Ill. 106; *Applehans* v. *Jurgenson,* 336 Ill. 427; *Frese* v. *Meyer,* 392 Ill. 59.) Having this test in mind we are satisfied that the verdict of the jury in sustaining the will was justified.

The only other point argued by appellant is that he was prejudiced by the statements made by counsel for appellee in his opening remarks, and by improper cross-examination of appellant's witnesses, upon the issue of whether appellee had exercised undue influence upon the deceased, or whether the influence, if existing, was brought about by another person. The appellee attempted to identify and offer in evidence certain letters found in the possession of the deceased written by the wife of appellant, for the purpose of showing that appellant's own conduct was one of the reasons why the will substantially excluded him from its benefits. Evidence of this kind has been received in cases where undue influence was the issue. (*Wilkinson* v. *Service,* 249 Ill. 146.) However, these letters were not allowed in evidence, and no objection made to the questions propounded the witnesses to identify the signatures, nor any offer made before the jury of the contents of the letters. A *bona fide* effort to identify

documents for the purpose of introducing them in evidence without disclosing their contents, though unsuccessful, does not constitute error. The letters did not go to the jury. Appellant was not injured by the mere attempt to identify signatures, especially when the ruling upon the introduction of the letters was in his favor.

The decree of the circuit court of Cook county will be affirmed.

*Decree affirmed.*