(No. 32516.—
Vera Mount *et al.,* Appellees, *vs.* Bessie Dusing *et al.,* Appellants.

*Opinion filed March 23, 1953.*

RALPH M. EATON, of Mt. Carroll, and MANUS & MANUS, of Freeport, for appellants.

WARNER & WARNER, of Dixon, and FEARER & NYE, of Oregon, (HENRY C. WARNER, and GEORGE F. NICHOLS, both of Dixon, and GERALD W. FEARER, of Oregon, of counsel,) for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Ogle County in a will contest. The issues were submitted to a jury, and in accordance with its verdicts the decree set aside the will and also a deed executed by the testator before the will was executed. The case is here because a freehold is involved.

Benjamin Gilbert died on March 4, 1950, at the age of eighty-one. He left surviving as his heirs-at-law three

sons, Guy, Orville and Elmer Gilbert, four daughters, Vera Mount, Letitia Wisner, Gladys Taylor and Bessie Dusing, and one grandson, Lloyd Gilbert, whose father, Benny Gilbert, had predeceased the testator. The will was admitted to probate in the county court of Ogle County. The estate consists of real and personal property valued in excess of $200,000.

By his will executed January 28, 1949, Gilbert made bequests of $5000 each to Guy Gilbert, Gladys Taylor, Bessie Dusing and Lloyd Gilbert, $50 each to Orville Gilbert, Vera Mount and Letitia Wisner and $5 to Elmer Gilbert. A bequest of $2000 was made to a grandson, Keith Kane, son of Gladys Taylor. Another bequest, of $5000, was made to Benjamin Gilbert, a grandson who predeceased the testator. The will also bequeathed $10,000 to Bessie Dusing and her son, William Robert Coffman, as trustees, with directions to pay the income annually to Vera Mount and Letitia Wisner, share and share alike, during their lives, and then to divide the balance between Bessie Dusing and Gladys Taylor. An undivided two-thirds of the residuary estate was left to Bessie Dusing and an undivided one-third to William Robert Coffman. Mrs. Dusing and Coffman were appointed executors.

About a year before the will was executed, on January 20, 1948, Gilbert deeded a farm of 180 acres in Ogle County to Bessie Dusing. This farm was worth about $45,000 at the time of the conveyance.

The plaintiffs, Vera Mount, Letitia Wisner, and Gladys Taylor, and Guy, Orville, Elmer, and Lloyd Gilbert filed their complaint, and later an amended complaint, against the defendants, Bessie Dusing, Keith Kane, and William Robert Coffman, individually, and Bessie Dusing and Coffman, as executors of the will of Benjamin Gilbert, deceased. The first two counts attacked the will. Count 1 alleged that the testator lacked the requisite mental capacity. Count 2 realleged the allegations of count 1, and also alleged that

the will was executed under undue influence exerted by Bessie Dusing. The third and fourth counts attacked the conveyance to Bessie Dusing. Count 3 alleged lack of consideration and lack of mental capacity at the time the deed was executed. Count 4 realleged the allegations of count 3, and also alleged that a confidential relation obtained between Gilbert and his daughter, Bessie Dusing; that she took advantage of the trust and confidence reposed in her by her father by inducing him to visit an attorney for the purpose of conveying the property to her, and that the conveyance was not his free and voluntary act but was made under her undue influence.

Defendants answered, denying the material allegations. They also moved for a severance of the trial of the issues raised in counts 1 and 2, contesting the validity of the will, from the issues in counts 3 and 4 relating to the validity of the deed, and for an order to compel plaintiffs to elect upon which issue they would first proceed to trial. The motion was denied. Both issues made by the pleadings were tried before a single jury which returned a verdict in favor of plaintiffs on each count. A decree was entered upon the verdicts.

Numerous errors are assigned. The first matter requiring consideration is the contention that the trial court erred in refusing to grant defendants' motion for a severance. That motion directed the court's attention to specific circumstances of the case relevant to a decision as to the proper method of trial. It pointed out that different periods of time "constituted the *res gestae*" of each of the two issues made: the validity of Gilbert's will, executed January 28, 1949, and the validity of the deed executed and delivered on January 20, 1948. It stated that different burdens of proof rested upon plaintiffs with respect to the weight and sufficiency of the evidence as to each issue and that different legal standards governed the competency and the ability of the decedent to execute the will and the deed.

It pointed out that separate and different rules of evidence were applicable on the two issues: that on the trial of the validity of the will, Bessie Dusing and Coffman were defendants both individually and in their representative capacities, and that they were incompetent witnesses by law, either individually or in their official capacities; that on the trial of the validity of the deed, Bessie Dusing was a defendant in her own proper person and not in a fiduciary capacity, and that Coffman was not a proper party defendant as to those counts. The motion concluded with a statement that the differences in the rules as to the weight and burdens of proof and the competency and incompetency of the various parties as witnesses would be so confusing to a jury that no one of the parties could have a fair and impartial trial of the issues before the same jury.

Determination of this contention requires identification and analysis of the issues which have been joined in the complaint. Counts 1 and 2 present a typical will contest. Count 3 seeks to set aside a deed, executed prior to the will, because of lack of consideration and lack of mental capacity on the part of the grantor. Count 4 attacks the deed on the grounds stated in count 3, and also alleges the the existence of a fiduciary relationship between grantor and grantee, and abuse of that relationship by the grantee. To the extent that it differs from count 3, its allegations are those of a typical bill to establish a constructive trust. The issues presented in counts 3 and 4 are equitable and as to them no right of trial by jury exists. If any of the issues presented in those counts are submitted to a jury, its verdict is advisory only. The will contest presented by counts 1 and 2 is purely statutory. It is not an ordinary proceeding in chancery. The cause is tried upon the single issue as to whether the writing proffered is the will of the testator. (*Innis* v. *Mueller,* 403 Ill. 11; *Tidholm* v. *Tidholm,* 391 Ill. 19; *Hunt* v. *Vermilion County Children's Home,* 381 Ill. 29.) By statute, either party to a will con-

test may demand a trial by jury as in actions at law, (Ill. Rev. Stat. 1951, chap. 3, par. 244,) and the verdict of a jury in such a proceeding has the effect of a common-law verdict. *Tidholm* v. *Tidholm*, 391 Ill. 19; *Hunt* v. *Vermilion County Children's Home*, 381 Ill. 29; *Anderson* v. *Anderson*, 293 Ill. 565; *Stephens* v. *Collison*, 249 Ill. 225.

While the defendants have raised no question as to the propriety of joinder of the issues here involved in a single complaint, an examination of the rules which have been evolved to regulate the injection of collateral issues into a will contest affords an appropriate perspective for consideration of the issue of severance immediately before us. The limited scope of the statutory issue in a will contest resulted in the formulation of rules relating to joinder of issues in such proceedings which are more restrictive than those ordinarily applied in equity. The governing principles, distilled from the many cases which have passed upon this problem, have been thus summarized: "While the statute provides that an issue at law is made whether or not the instrument is the testator's will, and, generally speaking, this is the only issue which is permissible, there are sometimes side issues which have to be determined. Thus, it may be necessary for the contestant to remove some obstruction to his contest, as where an agreement not to contest was obtained by fraud; or to set aside deeds made after the will was executed, and which stand in the contestant's way in obtaining the full benefit of his contest, or that the plaintiff has not such an interest as entitles him to contest the will. The mere fact that such issues are addressed to the court's general jurisdiction and that the jury's verdict upon them is advisory only, while the verdict on the statutory issue has the effect of a verdict at law, does not preclude the raising of such issues. The court can permit any issue to be raised which is essential to a complete settlement of the statutory issue and all that is essentially interwoven with it. This rule, however, is not in-

tended to permit a will contest suit to be joined with other actions which are not essential to a complete settlement of the statutory issue and are not essentially interwoven with it." 3 James, Illinois Probate Law and Practice, sec. 90-9.

After the adoption of the Civil Practice Act, with its liberal provisions concerning joinder of parties and issues, the statute relating to will contests was amended, apparently to preserve the restrictive rule of joinder which had been evolved by decision, by adding the provision which now reads: "Matters not germane to the distinctive purpose of the proceeding shall not be introduced by joinder, counterclaim or otherwise." Ill. Rev. Stat. 1951, chap. 3, par. 155.

The broad joinder of parties and causes of action which the Civil Practice Act permits is accompanied by provisions authorizing severance or consolidation whenever necessary to enhance the convenient disposition of the business of the court, or to avoid prejudice to the substantial rights of litigants. (Ill. Rev. Stat. 1951, chap. 110, pars. 147, 148, 168, 174, 175, 259.11.) A motion to sever issues for trial is thus addressed to the sound discretion of the trial judge, to be exercised in each case by an appraisal of administrative convenience and the possibility of prejudice to substantial rights of the litigants in the light of the particular problems which will arise in the course of the trial.

The practice which has heretofore prevailed with respect to severance of issues in will contests reflects the limited extent to which joinder has been permitted in those cases. *Flynn* v. *Troesch,* 373 Ill. 275, involved an issue as to the validity of the marriage of the testator, as well as the validity of his will. Holding that the trial court had properly severed these issues for trial, the court said (p. 278-9): "The contention of the plaintiffs that the court was without authority to sever these two issues is without merit, as a careful reading of sections 44 and 51 of the Civil Practice Act clearly indicates that an action involving materially

different issues may be severed by the court and our rule No. 11 has recognized the principle by providing 'equitable issues shall be heard and decided in the manner heretofore practiced in courts of equity.' Such practice heretofore has been to try the question of heirship by the court and the validity of a will by a jury. *Orchardson* v. *Cofield,* 171 Ill. 14; *Gilmore* v. *Lee,* 237 id. 402; *Stone* v. *Salisbury,* 209 id. 56. * * * In order to enable the plaintiffs to prevail, there must be a successful will contest and also a decree holding void the marriage * * *. The law provides that the first of these issues may be tried by a jury, the other by the court; they involve different characters of proof and may affect, differently, the competency of witnesses." To the same effect is *Frese* v. *Meyer,* 392 Ill. 59, in which one count alleged the existence of mutual wills and a contract not to revoke them, and the other alleged undue influence.

In the circumstances of this case, it is our opinion that it was error to deny the defendants' motion to sever the issues. There was a difference in time of one year between the execution of the challenged deed and the contested will, and mental capacity at both times was in issue. A higher degree of mental capacity is required to make a valid deed than to execute a will. (*Moneta* v. *Hoinacki,* 394 Ill. 47; *Greene* v. *Maxwell,* 251 Ill. 335.) Defendants Bessie Dusing and her son were sued both individually and in their representative capacities, so far as the will contest was concerned, but Mrs. Dusing, alone, was a defendant in the action to set aside the deed. Under section 2 of the Evidence Act, (Ill. Rev. Stat. 1951, chap. 51, par. 2,) she and her son were not competent witnesses, either individually or in their representative capacities, upon the issues going to the asserted invalidity of the will; as to the issues relating to the deed, she was competent to testify. The cumulative effect of these factors resulted in the imposition of an undue burden upon the jury. And although its verdict

upon the issue as to the validity of the deed was advisory only, the decree does not in any way indicate that the chancellor so regarded the verdict; so far as the record discloses, it appears to have been treated throughout as a verdict rendered in an action at law.

Defendants' motion for a severance should have been granted.

Since there must be another trial, a review of the evidence is not required, but to obviate the possibility that erroneous instructions might be repeated, we shall consider the errors assigned and argued with respect to instructions given on behalf of the plaintiffs. Instruction No. 14 reads, in part: "* * * where either undue influence or want of testamentary capacity is charged, as in this case, you may take into consideration on either issue all of the surrounding facts and circumstances including the provisions of the purported Will, their propriety or impropriety, their equality or inequality and their reasonableness or unreasonableness with reference to the amount of his property, the financial conditions and circumstances of his children and other situations, relationships and circumstances shown to exist by a preponderance of the evidence." Instruction No. 15 in similar fashion reads: "The Court instructs the jury that the intrinsic evidence of the will itself, arising from the unreasonableness or injustice of its provisions taking into view the state of the testator's property, family, the financial condition of the testator's relatives and the claims of particular individuals is competent and proper for the consideration of the jury."

The vice of these instructions lies in part in the fact that there was no evidence of the financial conditions and circumstances of Benjamin Gilbert's seven children, with the single exception that it appears from the record that Bessie Dusing owned a farm in addition to the farm deeded to her by her father in 1948. The inevitable effect of both instructions 14 and 15 was to focus attention upon the appar-

ently favorable financial situation of Mrs. Dusing and to emphasize the fact that she and her son received the bulk of her father's estate under the will. In *Turnbull* v. *Butterfield*, 304 Ill. 454, an instruction stated that the jury had "a right to take into consideration, together with all the other evidence in the case, the fact that said Lydia A. Butterfield made an unequal division of her estate and discriminated against the contestants." Holding that the instruction was erroneous, this court said (p. 458), "Even though the question of discrimination against the appellant was a matter proper to be given to the jury, it was clearly error for the court to assume that appellees had been discriminated against. An unequal division of property is not necessarily a discrimination. There may be many reasons why property should not be divided equally among the heirs of the maker of a will. * * * In any event, it is error to say that an unequal division of property by will is a discrimination, in the sense in which that term would be understood by the average juror. That is not a matter with which the jury have anything to do. It is not an issue before them. These instructions gave the jury permission to consider the unequal distribution of the property and to adjust the inequalities of the will." In *Donnan* v. *Donnan*, 236 Ill. 341, a similar instruction was held to constitute reversible error.

The instruction in *Dowie* v. *Sutton*, 227 Ill. 183, 202, cited by plaintiffs, is not as sweeping in extent as is instruction No. 14 in the present case. In *Dillman* v. *McDanel*, 222 Ill. 276, 289, where an instruction similar to instruction No. 15 was given, there was evidence showing that the testator had knowledge of the financial situation of some of his relatives. It also there appeared that instructions were given at the request of the proponents embodying the same propositions as contained in those assailed.

Instructions Nos. 14 and 15 were highly prejudicial and should not have been given.

Instruction No. 11 reads: "The Court instructs the jury that the capacity to comprehend a few simple details, if the estate be small, might qualify a person, in that case, to intelligently dispose of his property by will, which if the estate be large, requiring the remembrance of many facts and the comprehension of many details and the disposition to be made is complicated, the same mental capacity may·be wholly insufficient, to the intelligent understanding of the business requisite to the making of a valid will." The net effect of this instruction is that it divides wills into two classes upon the premise that if an estate is modest a will disposing of it is simple, while if the estate is substantial the will is necessarily complicated. It may well be, however, that a very simple will disposes of a large estate, and that an exceedingly complicated will disposes of a small estate. In the present case, the will was simple and, so far as material here, made several cash bequests and placed $10,000 in trust for the benefit of two of the testator's daughters during their lives. The evidence discloses that when the testator consulted with his attorney concerning the terms of his will, the attorney suggested that he go home, write out in longhand his desires with respect to each of his beneficiaries, and return the handwritten instructions to the attorney so that he could proceed with the preparation of the will from them. Complying with this suggestion, the testator left his attorney's office and returned a day or two later with a memorandum in his own handwriting containing the provisions which he wished to have incorporated in his will. The attorney then prepared the will based upon the memorandum. From our examination of the memorandum it is manifest that Benjamin Gilbert had a relatively simple plan for the division of his property and that he expressed that plan with clarity.

The evidence further discloses that the testator executed a simple will in 1941, at a time when his mental capacity is not challenged, the pattern of which was very similar to

that of the present will. The same attorney prepared both wills. The principal differences are that the earlier will devised a farm of 189½ acres to his wife and that the entire residuary estate, instead of two thirds, was devised and bequeathed to Bessie Dusing.

In *Down* v. *Comstock,* 318 Ill. 445, complaint was made that the jury should have been given an instruction, for all practical purposes, similar to instruction No. 11 in the present case. Holding that the instruction was properly refused, this court said (p. 461-462): "While this instruction may contain a correct statement of the law, it is open to the construction that the estate in question might require the recollection of many facts and the comprehension of many details. Although the testator's estate was large he could have had a very simple plan for its disposition. Nothing in the record shows that its testamentary disposition was necessarily complicated. * * * An instruction which states the law correctly but in an abstract form, or is not so drawn as to be applicable to the facts of the case, is properly refused." Upon the factual situation presented in *Dillman* v. *McDanel,* 222 Ill. 276, the instruction was held proper.

In the present case, instruction No. 11 was without a legitimate basis in the evidence and should not have been given.

Instruction No. 20 told the jury that since 1932 the Revenue Act of the United States has required that a person making or signing a deed, when the consideration exceeds $100, shall affix and cancel documentary stamps to the deed or instrument of conveyance. Instruction No. 19 reads: "The Court instructs the jury that since 1872 it has been the law in the State of Illinois that where a Warranty Deed is used, the grantor covenants and agrees: (1) That at the time of the making and delivery of such deed he was lawfully seized of an indefeasible estate in fee

simple and had good right and full power to convey the same. (2) That the same was then free from all encumbrances; and (3) That he warrants to the grantee the quiet and peaceable possession of such premises and will defend the title thereto; and such covenants are obligatory upon the grantor, his heirs and personal representatives. Quit Claim Deeds convey only such title as the grantor has, if any, but contain no covenants or warranties whatsoever."

Bessie Dusing testified that she purchased the farm from her father in 1948 for $19,000 and paid him in currency. The grantor's attorney, who prepared the deed, testified that Benjamin Gilbert stated, at the time, that he was selling the property. Two witnesses, Victor Preston Breckenbaugh and his wife, Pearle, testified by deposition to the effect that Bessie Dusing told them, "You know, Dad gave me that farm." and "You know my Dad gave me the lower farm." When the quitclaim deed, executed in January of 1948, was caused to be recorded, it did not bear any revenue stamps. Afterwards, the attorney notified Mrs. Dusing that it would be necessary for revenue stamps in the amount of $20.90 to be placed on the deed. Revenue stamps were purchased and placed on the deed, which was then re-recorded. The contestants' point is that use of a quitclaim deed containing no revenue stamps was a circumstance which indicated a gift of the farm. Objections to interrogation of the attorney upon this subject were sustained, the chancellor stating that the matter could be properly covered by instructions. Contestants assert that the jurors had no way of knowing the difference between a warranty and a quitclaim deed, or that revenue stamps were required where there was a consideration in excess of $100, and that they were entitled to know the law in this regard in considering the testimony of Mrs. Dusing and the attorney. Defendants quite properly complain that instruction No. 20 singled out and emphasized in the minds of the

jurors the delay of several weeks in placing revenue stamps upon the deed. It does not follow, as the contestants apparently sought to have the jury infer, that the delay in placing revenue stamps upon the deed tended to show that no consideration was paid by Bessie Dusing for the conveyance. In any event, the delay is without any bearing upon the question as to whether she exercised undue influence upon the grantor. We do not follow the argument that the use of a quitclaim deed instead of a warranty deed indicates that no consideration was actually paid by Mrs. Dusing. It is common knowledge that quitclaim deeds and warranty deeds are used to convey property in identical fact situations. The issue as to whether Bessie Dusing paid $19,000 for the farm which, admittedly, was considerably less than its fair market value of $45,000, was a collateral issue but slightly relevant to the major issue as to whether Mrs. Dusing exercised undue influence upon her father. The jury could well have been led to infer that a determination of whether Benjamin Gilbert gave or sold the farm to his daughter was of paramount importance.

Instructions 19 and 20 could serve only to confuse the jury and should not have been given.

Instructions Nos. 7 and 8 are not, in our opinion, open to the objections urged by defendants, and in any event were countered by instruction No. 21, given at defendants' request.

Defendants complain that instruction No. 6, by using the phrase "but in determining upon which side the preponderance of the evidence is," gave the jury no alternative but to decide that the preponderance of the evidence was upon one side or the other, ignoring the possibility that the evidence might be evenly balanced. Instructions Nos. 26, 30, 31 and 45, however, which related to the burden of proof, removed any possible defect contained in instruction No. 6.

The decree of the circuit court of Ogle County is reversed and the cause remanded, with directions to sustain

the motion of the defendants for a severance and to proceed in accordance with this opinion.

*Reversed and remanded, with directions.*