(No. 29073.—

HENRY C. FRESE *et al.,* Appellants, *vs.* LOUIS MEYER *et al.,* Appellees.

*Opinion filed November 21, 1945..*

MARKHEIM, HOFFMAN, HUNGERFORD & SOLLO, (HARRY MARKHEIM, and BECHER W. HUNGERFORD, of counsel,) all of Chicago, for appellants.

HOLLAND F. FLAHAVHAN, of Chicago, for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

Appellants, Henry C. Frese and Anna Frese Messerschmidt, hereafter referred to as plaintiffs, filed an equity suit in the circuit court of Cook county against Louis Meyer and others, appellees, to set aside the last will and testament of Fred W. Hahn, who died August 22, 1943.

The complaint consisted of two counts setting out the causes of action substantially as follows: Count I alleged a will dated August 7, 1943, should be set aside because Hahn and his wife executed mutual wills August 20, 1929, as the result of an agreement to make such wills, and not to revoke them, and in each of which wills the plaintiffs

were the ultimate beneficiaries upon the death of both Hahn and his wife. In count II the will of August 7, 1943, was alleged to have been made through undue influence exerted upon Hahn by defendant Louis Meyer, and therefore the only last will remaining in effect was that of August 20, 1929. Answers were filed denying all the material facts, or that the plaintiffs were entitled to the relief prayed in their said complaint.

The facts upon which the first count is based are: Mrs. Lena Hahn and the deceased were married May 23, 1929. He was a widower without children, and she was a widow and at that time had two children, who are the plaintiffs in this case. It was alleged and admitted that they held all their property in joint tenancy. August 20, 1929, they each made a will, and with the provisions identical, except as to the life beneficiary. Fred W. Hahn's will provided that all of his property should go to his wife, if she be living and continue to live for thirty days after his death, and in the event that she died first, or she should die within thirty days after his death, the rest and residue was given to his stepchildren, Henry Frese and Anna Frese in equal shares, and in case of the death of one of them then to the survivor, and in case of the death of both of them before the testator's death then to the heirs-at-law of his said wife, according to the statute of descent of the State of Illinois. Upon the same date Lena Hahn made a will of exactly the same purport, except that she gave the property to her husband, Fred W. Hahn, if he be living at the time of her death and should continue to live for thirty days after her death, the reversion clauses being exactly the same.

Lena Hahn died April 15, 1943. Her will was filed but never probated. The 1943 will of Fred W. Hahn was probated October 21, 1943, and defendant Louis Meyer was the sole beneficiary. Plaintiffs contend the 1929 wills were mutually made in pursuance of a contract, and the contract performed upon the part of Lena Hahn, whereby

the will executed by Fred W. Hahn on August 20, 1929, became and was irrevocable, and the will of August 7, 1943, of no force and effect.

Count II contained the usual allegations with respect to undue influence .exercised upon a testator, whereby the 1943 will became not his will but the will of the person exercising undue influence. . When the case was called for trial the court, over the objection of appellants, ordered the issue under count I to be tried by the court and not by the jury. Appellants contend that this was error, and that such count might well be deemed a part of a will contest. ·

Section 44 of the Civil Practice Act (Ill. Rev. Stat. 1945, chap. 110, par. 168,) provides for the joinder of causes of action, subject to rules, and among other things provides: "But the court may, in its discretion, order separate trials of any such causes of action or counterclaims if they cannot be conveniently disposed of with the other issues in the case." Supreme Court Rule 11 (Ill. Rev. Stat. 1945, chap. 110, par. 259.11,) provides, among other things: "If the court determines that the actions are severable, the issues formed on the legal counts shall be tried before a jury when a jury has been properly demanded, or by the court when a jury has not been properly demanded, and the equitable issues shall be heard and decided in the manner heretofore practiced in courts of equity."

In *Flynn* v. *Troesch*, 373 Ill. 275, a like situation arose, except that the issue, other than testamentary capacity, was whether plaintiffs had the requisite interest to entitle them to sue, and the court there ruled that it would try the issues separately, one with a jury and one without. The point was made that the court had no authority to sever the issues. We there said: "The contention of the plaintiffs that the court was without authority to sever these two issues is without merit, as a careful reading of sections 44 and 51 of the Civil Practice Act clearly indicates that an .

action involving materially different issues may be severed by the court and our rule No. 11 has recognized the principle. * * *. Such practice heretofore has been to try the question of heirship by the court and the validity of a will by a jury. [Citations.]"

The principle involved in the *Flynn case* is not different from that involved in this. Under the first count there was an issue of law to determine from the facts whether wills had been made by Fred W. Hahn and his wife under a contract by which, if they were not revoked while both parties were living, they could not be revoked thereafter. There was no error in the court trying the issue on the first count without a jury. The court then proceeded to hear the evidence applicable to the first count, and at its conclusion made a finding for the defendants, and as to that count dismissed the complaint for want of equity.

The first count of the complaint alleged that both wills, of Fred W. Hahn and Lena Hahn, were made on the same day in pursuance of a mutual agreement between them, that each will was not subject to revocation except during the life of both, and had not been so revoked, leaving the will of Fred W. Hahn executed August 29, 1929, in effect. It was held in *Curry* v. *Cotton*, 356 Ill. 538, that a joint will is one published and executed by two or more persons disposing of property owned jointly, or in common, or in severalty by them. Mutual or reciprocal wills are the separate instruments of two or more persons, the terms of such wills being reciprocal, by which each testator makes testamentary disposition in favor of the other. A will that is both joint and reciprocal is an instrument executed jointly by two or more persons with reciprocal provisions, and shows upon its face that the bequests are made one in consideration of the other. From these definitions it may be seen that the wills of Fred W. Hahn and Lena Hahn made August 20, 1929, came within the definition of mutual wills.

We have held that mutual wills generally are not of themselves sufficient evidence of a contract, and proof of the contract and the consideration to support it must be made *aliunde*. (*Curry* v. *Cotton,* 356 Ill. 538; *Klussman* v. *Wessling,* 238 Ill. 568; *Rice* v. *Winchell,* 285 Ill. 36.) In the *Rice case,* in discussing the requirements of a contract sufficient to render mutual wills operative as being made one in consideration of the other, and to become irrevocable as joint wills made under contract, we specifically held that the contract to obtain such a result must be certain and definite in all of its parts, that it must be mutual, and founded upon an adequate consideration, and that it must be established by the clearest and most convincing evidence, and that unless it is so proved neither would the wills be considered joint, nor will specific performance be awarded to complete the contract. The holding in that case is amply supported by citations from the former holdings of this court.

The evidence to support the first count is wholly insufficient to comply with these rules. It indicates that on the day these two wills were made Fred W. Hahn remarked: "I made ma happy today. We made our wills together. * * * Everything goes to ma, and then to the children;" and Mrs. Hahn said: "That's right, and if I should go first, it goes to pa and then to the children." And another witness related a conversation had with Hahn, in which, in response to a statement made by witness, who had just made her will, he said, "We had ours made last week and we agreed that we was going to —if I die my wife gets everything, and if she dies the children gets everything." And still another witness, in recounting substantially the conversation as that narrated above, testified after considerable prompting that Hahn had said "it could not be changed." Upon motion, this testimony was stricken by the court, but we are consider-

ing it as though it were in the record, in passing upon the court's ruling as to count I.

This was substantially all of the evidence upon the question of contract. If the foregoing were all that was before us, without a sight of the wills, it would be impossible to say that a contract of any kind had been made. It is not certain and definite in any of its parts, and there is no proof it was mutual and no mention whatever of a consideration. There is a showing that some nine years before, when Mrs. Hahn came from Germany, she had $6000 or $7000. And there is likewise evidence that Hahn had property and made conveyances of all of his real estate to his wife and himself by which they held it in joint tenancy. One of the elements constituting a will is its ambulatory character; that is, it may be revoked at the pleasure of the testator. *Martin* v. *Helms,* 319 Ill. 281; *Peoria Humane Society* v. *McMurtrie,* 229 Ill. 519.

In mutual wills, which deprive the parties of the right to revoke and are supposed to be established by contract, the compact between the parties must be proved by clear and satisfactory evidence. (*Martin* v. *Helms,* 319 Ill. 281.) In the case of *Curry* v. *Cotton,* 356 Ill. 538, we said: "In the case of mutual wills, the wills are not, generally, of themselves sufficient evidence of a contract, and proof of the contract and the consideration to support it must be made *aliunde* the wills, * * *." The most that could be urged from the proof made by the plaintiffs is that Fred W. Hahn and Lena Hahn on the same day made wills in which each was the beneficiary in fee, if living, and in case of death of the spouse each made the children of Lena Hahn beneficiary of the residue. There is absolutely nothing to indicate there was any agreement that either of the parties would not at any time have the right of revocation. The action of the court in dismissing count I for want of equity, under the evidence, was proper.

The second count of the complaint involved charged defendant Louis Meyer, a nephew of the deceased, procured the execution of the will in question through undue influence. This count contains no charge of lack of testamentary capacity upon the part of Fred W. Hahn. The defendants admitted in open court that plaintiffs had such an interest as was sufficient under the statute to maintain a will contest, because they were beneficiaries of the two wills executed in August, 1929, by Fred W. Hahn and Lena Hahn. Because of this stipulation the court sustained objections to the introduction of these two wills in evidence on the ground it had no bearing whatever upon the issue of undue influence.

At the close of the plaintiffs' case a motion was made by defendants to direct a verdict, which was denied by the court. The defendants offered evidence, and at the close of all of its evidence a motion made by the defendants to instruct the jury to find for the defendants was renewed, and the court so instructed the jury to find the issues upon count II for the defendants, and entered a finding and decree that the will involved was the last will of Fred W. Hahn.

A number of witnesses were offered by the plaintiffs who testified to the happy life of the deceased with his wife; that he had affection for her children, the plaintiffs; that he disliked the defendant Meyer, and that the latter visited him infrequently and the plaintiffs quite often. While these facts show the family history and the circumstances of the parties they do not show or constitute evidence of undue influence exercised by anyone. There is also evidence showing the deceased had the bodily infirmities of a man past eighty years of age, but it is neither charged nor was evidence offered that he lacked testamentary capacity at the time the will here involved was executed on August 7, 1943.

As directly bearing upon the issue of undue influence, it is shown by testimony that the deceased had, prior to his wife's death, expected, or at least indicated, the plaintiffs would be the beneficiaries of his will when he died. He lived for a time with one of the plaintiffs after his wife's death. There is also evidence of statements made by him that he was dissatisfied with the conduct of the plaintiffs after his wife's death, and that they were mean to him, and that they had withheld some of his property. He also expressed a feeling of animosity toward the defendant Meyer at different times before his death, and had made remarks indicating that he had obtained some of his first wife's property at the time of her death many years before. And there is also evidence that the deceased usually referred to his second wife in a highly complimentary manner, but also had made expressions of a different character. The evidence does not, however, in our opinion, show any fixed purpose that was not subject to change.

Although appellants have enumerated a great number of circumstances claimed to prove undue influence, and have characterized the actions of defendant Meyer as scheming, as indicating deep-seated and cold-blooded greed, and as having evil designs, and other descriptive terms of purpose, yet the evidence actually offered to prove undue influence covered instances occurring on a few occasions and is practically of no probative effect. The circumstances which would be construed as having some effect are as follows: Meyer was present at the funeral of the second wife, and assisted the testator in every way possible, and showed great solicitude for his welfare. On another occasion, when the testator was living at the home of one of the plaintiffs, and defendant Meyer and his wife were present, the testator wondered who was going to put flowers upon his grave, and it was alleged Mrs. Meyer said at that time: "When you change your will you put

that in your will." About a month before his death testator executed a power on the safety-box contract, giving joint ownership and joint control of the contents to defendant Meyer, and after Hahn's death Meyer made an affidavit, at the request of the Attorney General, showing he had taken from the box the contents thereof, in pursuance of such authority. There is no proof showing why the power was executed, or any influence inducing it.

The evidence also shows Meyer accompanied the testator to the latter's lawyer about August 1, 1943, when the latter desired to make a will, and came back with him the second time when he executed the will, but was not in the presence of the attorney and testator, nor did he select the attorney, who was one who had represented the testator for many years, or make any suggestions, or give any directions of any kind. One witness testified defendant Meyer had removed the testator from the home of the plaintiffs, and taken him to his own home to live. The fair purport of the evidence would indicate nobody connected with the testator's family could lead or take him anywhere, and that if he left the home of such plaintiff he left voluntarily, and in like manner voluntarily went to that of the defendant Meyer.

These facts constitute all that in our opinion could be considered upon the issue of undue influence, and are wholly insufficient to show such undue influence as required by law to invalidate a will. In *Applehans* v. *Jurgenson,* 336 Ill. 427, we said: "The undue influence which will avoid a will must be directly connected with the execution of the instrument and operate at the time it is made. The influence must be specially directed toward procuring the will in favor of a particular party or parties, and it must be such as to destroy the freedom of the testator's will and render the instrument obviously more the offspring of the will of another or others than of his own." Many cases are cited to support this rule, and the case is followed with

approval in *Miles* v. *Long*, 342 Ill. 589, and *Hauptman* v. *Graehl*, 343 Ill. 128.

The latest expression is contained in *Downey v. Lawley*, 377 Ill. 298, where a testator left substantially his entire estate to a sister to the exclusion of a brother. In upholding the will we commented there was no testimony that anybody was instrumental in getting the testator to execute the will; no testimony to show that the beneficiary, or anybody for her, exercised any influence over the testator; that she was not present when the will was executed. The attorney there was in fact that of the beneficiary, but there was nothing to show anything done by him was at her request; that the testator requested the scrivener to draft the will, and later asked two neighbor women to witness it. Under such circumstances, we held the proponents were entitled to have the issue of undue influence withdrawn from the jury.

In the present case the only circumstance of moment is the fact the defendant Meyer accompanied the deceased to the lawyer's office. There is no proof said defendant requested him to go for the purpose of making a will. The lawyer had been the attorney for the testator for many years. Hahn wanted to prepare a will that day, but at the suggestion of the attorney he postponed its execution for over a week, and when he came back a week later the defendant Meyer remained in the outer office, or hall, and was not present when the will was dictated or executed. Witnesses were called in, and the will read over in the presence of the witnesses, and then he signed in their presence. There is no evidence showing the defendant Meyer did anything directly connected with the execution of the instrument. There is no evidence any influence was directed towards procuring a will in his favor, and nothing to show the freedom of will of the testator was hampered or controlled in any manner. Meyer was one of the heirs of testator, and plaintiffs were not related

to him. The facts show the testator was a strong-minded, strong-willed individual, and a poor subject upon whom to exercise undue influence. The record shows no evidence to sustain the allegation of undue influence, and the court would have been justified in directing a verdict at the close of the plaintiffs' evidence.

The defendants' evidence, however, conclusively shows the will was not the result of undue influence. Hahn came to his broker's office about August 1 with Meyer. His attorney happened to be there. He said: "Hello, * * * Come over here and sit down with us, I want to talk to you." He said he was having trouble with his stepchildren; that he had treated them well, but now he had to move away and was going to live with his nephew, and told the lawyer to change things so the nephew would get it. He was advised to wait a week or ten days and come back. He was put out and angry at the plaintiffs for some reason. Testator expressed this to his attorney and the two witnesses to the will, old friends of his of many years standing, and to one witness offered by plaintiffs. He told his attorney he would have to do something to get back from the plaintiffs tools and silverware worth at least $500, which they were withholding, and said they had used vile names towards him.

Another witness, an old friend, said he met Meyer about the time of the first visit to the attorney and was introduced to him, and testator said he was living with Meyer, and that he and his stepdaughter had had a misunderstanding, and as long as he could not get along he thought he might as well make a change. Substantially the same thing was said to a Mr. Valkenaar, another old acquaintance, and witness to the will. At the time the will was made both of these witnesses are positive Meyer was not in the room with the attorney, and the attorney testified that on August 7, the day the will was made, Hahn came

to his office; that he was alone; that he told him he wanted to make a will, and how he wanted it made, and give the property to his nephew; that the attorney mentioned provisions for other relatives, and deceased replied in the negative. He told how he wanted to be buried; where he wanted to be buried, and named the defendant Meyer as executor. After he had given the directions the attorney suggested to the testator that he come back Saturday, but the latter insisted upon it being done at that time, and he went to the typewriter and prepared it, and called in the two men from the real-estate office in the adjoining room, well known to the deceased, and he signed the will and they witnessed it.

These additional facts not only show a firm, deliberate purpose of the testator, but also show the immediate and actual author of the will was the testator, who gave his own directions, and used his own agent to effect it. As we pointed out above, the evidence upon the part of the plaintiffs was insufficient within itself, but the evidence adduced by the defendants indicates beyond all question the testator, and not the defendant Meyer, was the author of the will.

The plaintiffs urge several errors in the ruling on the admission and rejection of evidence by the court. The separate discussing of these rulings would unduly lengthen this opinion. We have examined them all, and find no material error in the court's rulings; and further, if the offers of proof made by plaintiffs had been allowed it would have furnished no proof of undue influence.

The decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*