National Bank of Austin, Executor under Last Will and Testament of Minnie E. Moyer, Deceased et al., Appellants, v. Ann Emerson, Individually and Executrix under Last Will and Testament of Minnie E. Moyer, Deceased et al., Appellees.

Gen. No. 44,274.

Opinion filed November 10, 1948. Released for publication December 2, 1948.

GILMORE, HENDRICKS & CULLEN, of Chicago, for appellants; MATTHEW J. CULLEN, of Chicago, of counsel.

FRANK T. MURRAY, of Chicago, for appellees; FRANKLIN D. TRUEBLOOD, of Chicago, of counsel.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

Harry Thomas Moyer and Minnie E. Moyer were married for many years prior to March 29, 1929. They had no children. He owned and operated a drug store in Chicago. She was not employed. On March 29, 1929, Carl J. Stenfelt, Anna A. Stenfelt and the Moyers created a land trust under an agreement with the Austin State Bank, as trustee. The beneficial interest in the trust was evenly divided between the Stenfelts and the Moyers as joint tenants. Glen H. Tyrell, secretary and trust officer of the Austin State Bank, who signed the trust agreement on behalf of the bank, suggested to the parties that they make wills. The matter of making wills was discussed on several occasions. The wills were prepared, submitted and duly executed by the Moyers on September 4, 1929.

The will of Mr. Moyer, after bequeathing all his household goods, personal effects and automobile to his wife, bequeathed the rest, residue and remainder of his estate to the bank and his wife as trustees, with the direction that the net income be paid to his wife during her lifetime, and that in the event of any emergency the trustees might, in their discretion, make additional payments from principal to the widow for her benefit, and that at her death, or at his death if she predeceased him, the bank distribute the remainder of the estate, one-half to the surviving children of Carrie Haskamp, the only sister of Mrs. Moyer, and one-half, share and share alike, to Mr. Moyer's sister, Rose E. Perrigo and his brother, Irwin J. Moyer. The will of Mrs. Moyer, after bequeathing all household goods, personal effects and other property to her husband, directed that in the event he did not survive her, all of her property was bequeathed and devised, one-half to the surviving children of her sister, Carrie Haskamp, and one-half to the surviving children of Rose E. Perrigo, the only sister of her husband.

Mr. Moyer died on June 11, 1940. His will was admitted to probate. His widow accepted the benefits made for her under the will and acted as cotrustee with the bank. On December 28, 1943, the widow made a new will, leaving her entire estate to her sister, Carrie Haskamp, and omitting entirely the surviving children of Rose E. Perrigo. Minnie Moyer died on September 6, 1945. Both of her wills, one dated September 4, 1929 and the other December 28, 1943, were presented for probate, but only the latter was admitted to probate. Thereupon, the bank, as executor under the last will and testament of Minnie E. Moyer, dated September 4, 1929, and the surviving children of Rose E. Perrigo filed a complaint against the executrix and beneficiaries under the will of Minnie E. Moyer, dated December 28, 1943, and prayed that the latter will be declared null and void and that the assets of her estate

be distributed in accordance with the prior will, which they alleged was a mutual will with reciprocal provisions executed by Mr. and Mrs. Moyer pursuant to an agreement between them.

The chancellor who heard the testimony found that the Moyers did not contract to make mutual wills; that the widow had the right to make her last will and testament of December 28, 1943 and that in so doing she violated no contract rights; that plaintiffs did not prove the pertinent allegations of their complaint by clear, satisfactory and convincing evidence; that they are not entitled to the relief prayed; and he dismissed the complaint for want. of equity at plaintiffs' costs. Plaintiffs, appealing, ask that the decree be reversed and that a decree be entered according to the prayer of their complaint.

Mr. Tyrell, called by plaintiffs, testified that on March 29, 1929, the date of the execution of the trust agreement, he explained to the Moyers that without wills their property would go to the family of the survivor; that each stated that they did not want that to happen; that they wanted their property to be divided evenly between their two families; that between March 29 and April 25, 1929, the Moyers again saw him; that they advised him that they wished to make wills; that they gave him directions for the preparation of will memoranda, with the exception of the ultimate disposition of their property on the death of the survivor; that they explained that they had agreed to divide their property evenly between the two families upon the death of the survivor, but had not yet agreed on the persons in each family who were to share their respective halves; and that they told him to prepare the memoranda leaving that part blank and that they would give him instructions later.

He testified further that on April 25, 1929, the Moyers again saw him; that each read the memoranda he had prepared, that each approved his and her own

and the spouse's memorandum and instructed him to insert in each will memorandum in the blank space which was left for the distribution of their property, upon the death of the survivor, the following words: "one-half to the surviving children of the only sister of Minnie E. Moyer, Carrie Haskamp; one-half to the surviving children of the only sister of Harry Thomas Moyer, Rose E. Perrigo"; that between the 15th and the end of July, 1929, the Moyers conferred with him and examined memoranda that had been prepared in accordance with the previous conferences; that Mrs. Moyer stated that the memorandum was entirely satisfactory; that Mr. Moyer replied that he was not satisfied and wanted to change it; that Mr. Moyer stated that if his wife wished to leave one-half to the children of Carrie Haskamp, her only sister, it was all right, but he wanted his one-half divided between his brother and sister instead of between his nieces and nephews, who were children of his sister, Rose E. Perrigo; that Mrs. Moyer said: "I don't want that"; that Mr. Moyer said: "Well, that is the only way we will do"; that they discussed the matter between them; that they then instructed him, Tyrell, to prepare their wills and provide that in Mrs. Moyer's will upon the death of the survivor, one-half would go to the children of Carrie Haskamp and one-half to the children of Rose E. Perrigo; and that in Mr. Moyer's will upon the death of the survivor, one-half would go to the children of Carrie Haskamp and one-half to Rose E. Perrigo, his sister, and Irwin J. Moyer, his brother. Mr. Tyrell testified further that the wills were then prepared and submitted to the Moyers on September 4, 1929; that each examined the will of the other as well as his own; that they approved both wills, Mrs. Moyer saying: "This divides it evenly between the two families, just what we want"; that Mr. Moyer said: "That is exactly what we want. We differ as to how it should be divided, but I am willing to let it go her way if she sur-

vives me and go my way if I survive her''; that witnesses were then called; that the testators signed their respective wills at the same time; and that after they signed their individual wills the witnesses signed each of the instruments in their presence.

Plaintiffs' theory of the case is that on September 4, 1929, the Moyers executed mutual wills with reciprocal provisions, pursuant to a contract or compact between them; that he died on June 11, 1940; that his mutual will with reciprocal provisions in favor of his widow and her sister's children, as well as his own sister and brother was admitted to probate; that the widow consented to the admission of this will to probate and accepted the provisions made for her; that by reason thereof her mutual will made at the same time as her husband with reciprocal provisions in his favor and his sister's children, as well as her own sister's children, became irrevocable, that her subsequent will dated December 28, 1943 is null and void; and that the assets in her estate should be distributed in accordance with the provisions of her last will and testament dated September 4, 1929. Defendants' theory of the case is that decedents did not enter into any contract; that Mrs. Moyer had the legal right to revoke her will of 1929 either before or after the death of her husband; and that plaintiffs wholly failed to establish that decedents entered into a contract to make wills.

In the recent case of *Jordan v. McGrew,* 400 Ill. 275, our Supreme Court said (279):

''Mutual wills generally are not of themselves sufficient evidence of a contract, and proof of the contract and the consideration to support it must be made *aliunde.* To render mutual wills operative as being made one in consideration of the other, and for such wills to become irrevocable as joint wills made under contract, the contract must be certain and definite in all its parts, it must be mutual, founded upon an adequate consideration, and established by the clearest

and most convincing evidence. Unless it is so proved, neither would the wills be considered joint, nor will specific performance be awarded to complete the contract. (*Frese v. Meyer,* 329 Ill. 59.) In the *Frese case,* the only evidence offered to support the two wills was that on the day they were made the husband remarked, 'I made ma happy today. We made our wills together. . . . Everything goes to ma, and then to the children'; and the wife said, 'That's right, and if I should go first, it goes to pa and then to the children.' One other witness who had just made her will testified to a conversation with the husband, in which he said: 'We had ours made last week and we agreed that we was going to—if I die my wife gets everything, and if she dies the children gets everything.' In passing upon this testimony we held there was absolutely nothing to indicate there was any agreement that either of the parties would not at any time have the right of revocation. To justify the decree entered in this case, it must appear from the evidence that there is no doubt that a contract was made, and that its terms have been clearly and conclusively established. *Chambers v. Appel,* 392 Ill. 294, 298, and cases cited.''

In *Frazier v. Patterson,* 243 Ill. 80, the court said (84):

''Wills may be joint or mutual or both joint and mutual. A joint will is one where the same instrument is made the will of two or more persons and is jointly signed by them. It is not necessarily either mutual or reciprocal. Mutual wills may be defined as the separate wills of two persons which are reciprocal in their provisions. A will that is both joint and mutual is one executed jointly by two or more persons, the provisions of which are reciprocal and which shows on its face that the devices are made one in consideration of the other. These several classes of wills have some characteristics that distinguish them one from the other. A joint will which is not reciprocal is simply the individual personal

will of each of the persons signing the same and is subject to the same rules that would apply if the will were several. Mutual wills,—that is, where two persons execute wills reciprocal in their provisions but separate instruments,—may or may not be revocable at the pleasure of either party, according to the circumstances and understanding upon which they were executed. To deprive either party of the right to revoke such mutual will it is necessary to prove, by clear and satisfactory evidence, that such wills were executed in pursuance of a contract or a compact between the parties, and that each is the consideration for the other; and even in cases where mutual wills have been executed in pursuance to a compact or agreement between the parties, the law appears to be well settled that either party may, during the lifetime of both, withdraw from the compact and revoke the will as to him. A joint and mutual will is revocable during the joint lives by either party, so far as relates to his own disposition, upon giving notice to the other, but it becomes irrevocable after the death of one of them if the survivor takes advantage of the provisions made by the other. 30 Am. & Eng. Ency. of Law, (2d ed.) 621, and cases cited; 1 Redfield on Wills, 182, 183; *Walpole v. Orford,* 3 Ves. Jr. 402; Schouler on Wills, sec. 455, *et seq.*"

Plaintiffs were required to establish by the clearest and most convincing evidence that the alleged contract is certain and definite in all its parts. *Klussman v. Wessling,* 238 Ill. 568; *Frese v. Meyer,* 392 Ill. 59. There is no dispute as to the law applicable to the case. Each case depends upon its own facts. In all of the leading cases the courts have considered the relationship of the parties, their respective property holdings, their occupations, their motive and such evidence as is available as to the preparation and execution of the wills, and have compared the provisions of the wills with the benefits received or contemplated by the

parties. Plaintiffs maintain that the chancellor erred in holding that they did not prove the allegations of their complaint by clear and convincing evidence. Plaintiffs place great reliance on and discuss what the Supreme Court said (page 86) in the *Frazier* case and state that it is apparent from what is said in that case that if a husband and wife at the same place and on the same day execute mutual wills with reciprocal provisions at the same time and with the same witnesses after first reading the other's will and knowing of the disposition the other had made of his property, the inference is strong that the wills were made as a result of a mutual or reciprocal agreement, or an understanding between them. An examination of the wills made in 1929 discloses that they were entirely independent and unrelated documents. Neither contains any reference to the other, nor does either contain any language from which a contract can be inferred. The written memoranda by Mr. Tyrell is a preliminary draft of the disposing parts of the wills to follow. They do not contain words of contract or reference to contract. The transcript of the evidence does not show testimony of an offer to contract upon certain terms and conditions, or for an acceptance of such offer or mutuality of undertaking by decedents against revocation. From a consideration of the entire record and the law applicable to the case, we are satisfied that the chancellor did not err in finding that plaintiffs failed to establish their case by clear, satisfactory and convincing evidence. Therefore, the decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*

KILEY and LEWE, JJ., concur.