MOLLIE NEFF v. HARRY POBOISK, INDIVIDUALLY AND AS EXECUTOR AND SPECIAL ADMINISTRATOR OF ESTATE OF BEN POBOISK.

161 N. W. (2d) 823.

October 4, 1968—No. 40,935.

---

*Stacker, Silverstein, Burke & Radsom* and *Thomas J. Burke,* for appellant.

*Ruttenberg, Orren, Griswold & Cohen* and *Kenneth P. Griswold,* for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Rogosheske, JJ.

OTIS, JUSTICE.

This is an action by a sister against a brother seeking to enforce the terms of mutual wills executed by their parents. The matter was tried without a jury. The court found that the wills constituted an irrevocable contract enforcible in equity. This appeal is from the judgment.

The only issue is whether there was clear, positive, and convincing evidence to support the court's findings. We hold that there was not.

On August 24, 1961, Ben and Pauline Poboisk executed identical wills drafted in their presence by the same attorney. Each left the other all of his or her property with the provision that the estate of the survivor would be distributed as follows: To their son, Harry Poboisk, Lots 5, 6, and 7, Block 4, Van Doren's Addition to St. Paul; and to their daughter, Mollie Neff, Lots 6, 7, and 8, Block 1, Milton's Addition to St. Paul. Pauline Poboisk died on January 16, 1965, and on April 27, 1965, Ben Poboisk executed a new will, leaving his son, Harry, the three lots in the Milton Addition as well as the three lots in the Van Doren Addition. To his daughter, Mollie Neff, he left his homestead. Ben Poboisk died on November 25, 1965. Mrs. Neff has brought these proceedings to recover title to Lots 6, 7, and 8, Block 1, Milton's Addition.

Various relatives testified concerning the intention which the parents expressed to them in numerous family discussions. It is clear that both parents repeatedly stated their purpose to divide their estate equally between their children. They wanted peace in the family.

Plaintiff argues that the court's finding that the elder Poboisks intended to enter a binding contract in executing mutual wills is supported by the fact the wills themselves were identical and reciprocal, were executed at the same time before the same witnesses, and were prepared by the same attorney. Nevertheless, the attorney who prepared the wills and supervised their execution did not insert in the wills a recitation that they would have the effect of a binding agreement. He testified as follows:

"Q. During the time that you discussed these wills were—and I'm talking at this time of the 1961 wills—in the presence of Mr. and Mrs. Poboisk was there any talk by anyone of you about whether these will [sic] would be irrevocable?

\* \* \* \* \*

"The Witness: None whatever."

In holding that the mutual wills of the elder Poboisks constituted a binding contract between them, the trial court relied on Mosloski v. Gamble, 191 Minn. 170, 253 N. W. 378,[1] where we approved the following definition of a mutual will (191 Minn. 171, 253 N. W. 379):

"Mutual or reciprocal wills are those in which two or more persons make mutual or reciprocal provisions in favor of each other, as by providing that the property of one dying first shall go to the survivor or survivors; and this may be either where all of them unite in the execution of one instrument, or where several instruments are executed by each of them separately."

We went on to say that the fact two wills are made concurrently does not necessarily establish them as mutual wills, but their mutuality may

---

[1] Sparks, *Enforcement of Contracts to Devise or Bequeath after the Death of the Promisor*, 39 Minn. L. Rev. 1, 23; Note, 19 Minn. L. Rev. 95, 112; 32 Minn. L. Rev. 630, 631.

be shown by surrounding circumstances and parol evidence. We concluded (191 Minn. 175, 253 N. W. 381):

"* * * [T]he wills themselves, the situation of testators, and the testimony of the lawyer who drafted them convincingly establish the compact or agreement * * *."[2]

Mosloski is distinguishable on two grounds. First, and decisively, the attorney who drafted the wills in that case told the testator and testatrix that the wills would "stand like a contract." Equally significant was the fact that the son who claimed to be a beneficiary of the mutual wills was promised by his father that he would have the property in question by will or descent, and the son farmed and developed the land in reliance on that promise. Mosloski was a case where, during the lifetime of the parents, each son was allocated a tract of 160 acres which each occupied and treated as his own.

As we view the case before us, the testimony falls far short of proving by evidence which is clear, positive, and convincing a contract between the elder Poboisks. Jannetta v. Jannetta, 205 Minn. 266, 269, 285 N. W. 619, 621. At most, we find two elderly parents preoccupied with preserving peace in the family by treating their children equally. The fact that the parents executed identical wills has little significance. Indeed, it is the usual manner in which parents plan the disposition of their estates. Diez v. Rosicky, 145 Neb. 242, 245, 16 N. W. (2d) 155, 157. We subscribe to the view that execution of identical wills gives rise to no presumption that a binding contract was intended. Ridders v. Ridders, 156 Ore. 165, 65 P. (2d) 1424; Frese v. Meyer, 392 Ill. 59, 63 N. E. (2d) 768.[3]

A leading case cited by plaintiff is Doyle v. Fischer, 183 Wis. 599, 198 N. W. 763, 33 A. L. R. 733. The Wisconsin court there held (183 Wis. 608, 198 N. W. 766, 33 A. L. R. 738):

---

[2] See, Annotation, 169 A. L. R. 9, 69.

[3] The testimony in the Frese case was strikingly similar to that in the instant case, viz., the testator was quoted as saying (392 Ill. 64, 63 N. E. [2d] 770): "I made ma happy today. We made our wills together. * * * Everything goes to ma, and then to the children"; to which the testatrix added, "That's right, and if I should go first, it goes to pa and then to the children."

"\* \* \* The fact that these wills constitute but a single document, that they were executed at the same time, that each of the testators knew of the provisions made in the will of the other, that some of the children were provided for by one, and the others by the other, testator, conclusively indicates that the two wills resulted from a mutual agreement between the testators, and that their provisions were in accordance with such prior agreement."

The Doyle case subsequently lost much of its vitality by a holding of the Wisconsin court in Estate of Hoeppner, 32 Wis. (2d) 339, 145 N. W. (2d) 754. There the court recognized that the Doyle decision represented a minority position but stated (32 Wis. [2d] 344, 145 N. W. [2d] 757):

"Whatever infirmities are believed to exist in the Doyle-Schwartz rationale, nevertheless this jurisdiction is, on the basis of *stare decisis*, committed to it."[4]

Our reluctance to find mutually binding wills in the absence of unequivocal evidence of intention is well articulated by Mr. Justice Gordon in his concurring opinion (32 Wis. [2d] 349, 145 N. W. [2d] 760):

"The results of our holding this to be a joint contractual will are so drastic that a sounder rule, in my opinion, would require clear-cut proof that a contract was actually intended. Take the following example: If a young husband and wife sign a joint will when they are about twenty-five years of age and then one of them dies, the survivor is bound (even if he or she lives another fifty years) and must leave all of his or her property exactly as required by the joint will. In other words, the concrete, once poured, is permanently set; neither remarriage, the birth of new children, or other major changes can alter it. The vicissitudes of life are such that it would seem more sensible to me that we ought not to presume such an intent unless the parties clearly declare it."

We share the misgivings thus expressed where compelling proof of intention is absent. A wiser rule is to presume that a husband and wife intend flexibility in the disposition of the survivor's estate. It is human

[4] Schwartz v. Schwartz, 273 Wis. 404, 78 N. W. (2d) 912.

experience that the "dead hand" of a long-departed testator often creates more mischief than it prevents. Since, as Judge Gordon suggests, the circumstances of children and grandchildren may fluctuate greatly in the course of time, the law should be slow to embalm a disposition which proves to be unrelated to the realities which exist at the time of the surviving spouse's death.

We find the proof of mutually binding wills inadequate and the judgment is therefore reversed.

Reversed.