564 P.2d 908

In the Matter of the ESTATE of Joseph
R. BEAUCHAMP, Deceased.

Dorothy J. BEAUCHAMP, Surviving
Spouse, Appellant,

v.

Simone EICHENBERGER, as the Personal
Representative of the Estate of Joseph
R. Beauchamp, Deceased, the Estate of
Joseph R. Beauchamp, Deceased, and
Monique Beauchamp, Michelle Beau-
champ, Lisa Beauchamp, Denise Beau-
champ, Joseph Beauchamp, Jr. and Si-
mone Eichenberger, the children of Jo-
seph R. Beauchamp, Deceased and claim-
ants, Appellees.

No. 2 CA–CIV 2215.

Court of Appeals of Arizona,
Division 2.

Feb. 3, 1977.

Rehearing Denied March 29, 1977.

Review Denied April 26, 1977.

Garven W. Videen, Tucson, for appellant.

Zipf, Richey, Leiber & Henderson by
Walter L. Henderson, Tucson, for appellee
Eichenberger.

Miller, Pitt & Feldman, P. C. by G. Eu-
gene Isaak, Tucson, for minors.

OPINION

HOWARD, Chief Judge.

In 1951 the deceased married Dorothy C.
Beauchamp (hereinafter referred to as Dor-
othy I). Six children were born as the
result of this marriage. On October 30,
1964, in connection with a divorce action, a

property settlement agreement was entered into between the deceased and Dorothy I. This agreement which was incorporated into the divorce decree provided, inter alia:

"8. Husband further agrees to execute a Last Will and Testament leaving his entire estate, real and personal, wheresoever located, to the children of the marriage of the parties. Husband further agrees that he will have the attorney who prepares his Last Will and Testament, at various times during his life, notify the Wife by certifying that the Will as prepared by said attorney conforms to the provisions of this paragraph No. 8.

\* \* \* \* \* \*

11. All property now owned, or in the future acquired by a party hereunder, shall be the sole and separate property of such party. Each party shall have an immediate right to transfer, dispose of, by Will (except limited in paragraph 8) deed or bill of sale, or in any other manner, such party's interest in all property belonging to such party after the date hereof, and this right shall extend to all future acquisitions of property by such party, as well as to all property acquired by said party pursuant to this Agreement.

\* \* \* \* \* \*"

On November 20, 1972 the deceased executed his will leaving all of his property to his children. On March 31, 1973, the decedent married appellant, Dorothy J. Beauchamp, hereinafter referred to as Dorothy II.

When decedent died on June 19, 1974, his will of November 20, 1972 was admitted into probate. The inventory and appraisement filed in the probate court shows the net value of the estate to be $83,020.30 and consists entirely of the separate property of the decedent. Dorothy II, who is not mentioned in this will, applied under A.R.S. § 14–2403 for a maintenance allowance and the court granted her an allowance of $500 per month for one year.

The decedent's children timely filed a claim against the estate and a petition for allowance of the claim requesting the court to find the property settlement agreement a binding claim against the estate. Dorothy II objected to the claim on the grounds that she was an omitted spouse under the provisions of A.R.S. § 14–2301 and therefore entitled to the share of the estate she would have received had the decedent died intestate. The trial court found that the children had a claim to the *entire* estate.

Appellant presents two questions for review: (1) Is Dorothy II entitled to a share of the estate as an omitted spouse? (2) Did the property settlement agreement operate to preclude Dorothy II from receiving a maintenance allowance under A.R.S. § 14–2403? (3) Is the claim of the children the type of claim contemplated by A.R.S. § 14–1201?

■ Dorothy II contends that paragraph 8 of the property settlement agreement is void as against public policy and she is therefore an omitted spouse under A.R.S. § 14–2301 which states:

"A. If a testator fails to provide by will for his surviving spouse *who married the testator after the execution of the will,* the omitted spouse shall receive the same share of the estate he would have received if the decedent left no will *unless it appears from the will that the omission was intentional* or the testator provided for the spouse by transfer outside the will and the intent that the transfer be in lieu of a testamentary provision is shown by statements of the testator or from the amount of the transfer or other evidence.

B. In satisfying a share provided by this section, the devises made by the will abate as provided in Sec. 14–3902." (Emphasis added)

An omitted spouse is entitled to one-half of the separate estate by virtue of the provisions of A.R.S. § 14–2102(2).

A.R.S. § 14–2301 is similar to § 2–301 of the Uniform Probate Code which states in its comment that this section reflects the view that the intestate share of the spouse is what the decedent would want the spouse to have if he had thought about the relationship of his old will to the new situation. Uniform Laws Annot., Vol. 8, p. 341. It

does not appear from the will that the omission of Dorothy II was intentional and she is an omitted spouse.

Analysis of the property settlement agreement discloses that it did not prevent the decedent from disposing of his property prior to his death. He could have made a gift to Dorothy II of all his property without violating the terms of the agreement. Furthermore, although he agreed to leave his property to his children, the agreement does not state what share each child is to receive. Dorothy II does not argue that the property settlement agreement was not supported by adequate consideration, but she does argue that it is a void service contract since it was an attempt to provide for the support of the children after decedent's death. In support of this contention she has cited cases such as *Owens v. McNally,* 113 Cal. 444, 45 P. 710 (1896) dealing with service contracts which stand for the proposition that such contracts will not be specifically enforced if they are harsh and inequitable.

The typical service contract is one where the deceased agreed to devise his property to a certain person in return for the person's agreement to care for the deceased during his lifetime.[1] Under such a contract the services are to be performed for the deceased. It is clear that the property settlement agreement there is not a service contract and the authority cited is inapposite.

However, courts have invalidated contracts as unreasonable and against public policy where a person has irrevocably agreed to divest himself of all control of all his property of every nature whatever which he at the time possesses, and also of all he may subsequently acquire. Thus in *Baltimore Humane Impartial Society, etc. v. Pierce,* 100 Md. 520, 60 A. 277 (1905) the court refused to enforce an agreement made by an inmate of a home for the elderly who agreed, upon admission and in consideration of the admission, to convey to the home all property which he then owned or might thereafter acquire. This case must be distinguished from the case at bench since here the decedent was free to alienate any and all of his property under the agreement, the only obligation being to make a will devising whatever property he might have at death to his children.

■ We see nothing harsh, inequitable, or oppressive nor any violation of the public policy of the state in the property settlement agreement. It was a valid and enforceable contract. In Arizona a contract to devise property is enforceable. *Remele v. Hamilton,* 78 Ariz. 45, 275 P.2d 403 (1954).

■ The children are thus entitled to one-half of the estate by virtue of the will. The deceased failed to execute a new will or codicil after his marriage to Dorothy II. Two consequences flowed from this failure: Dorothy II became an omitted spouse and the deceased breached his contract to execute a will leaving his entire estate to his children. Thus the children, as third party beneficiaries, had a claim for the balance of the estate for breach of contract by virtue of A.R.S. § 14–1201(4) which defines the word "claims" as including liabilities arising in contract.

As for the maintenance allowance, A.R.S. § 14–2403 provides in part:

"A. In addition to the right to the allowance in lieu of homestead and exempt property, if the decedent was domiciled in this state, the surviving spouse [is] entitled to a reasonable allowance in money out of the estate for [her] maintenance during the period of administration, which allowance may not continue for longer than one year if the estate is inadequate to discharge allowed claims. . . ."

The probate court found that the allowance of the children's claim depleted the estate and made it inadequate to discharge allowed claims. The allowance of the children's breach of contract claim does not deplete the estate. Dorothy II is entitled to a continuation of the family allowance under A.R.S. § 14–2403. The probate court

---

1. See also Annotation, 69 A.L.R. 14.

erred when it failed to continue the family allowance.

We modify the finding of the probate court that the children of the deceased have a valid "claim" to the entire estate of the deceased to a finding that they have a valid claim as to one-half of the estate. That part of the order terminating the family allowance is vacated and set aside and the case is remanded for further proceedings consistent with this opinion.

HATHAWAY and RICHMOND, JJ., concur.