389 So.2d 244 (1980)
ESTATE OF Louis SOMOGYI, and Joanne Perko, Richard Perko, and Flagship First National Bank of Ormond Beach, Appellants,
v.
Jeannett MAROSITES, et al., Appellees.
No. NN-212/T1-66.
District Court of Appeal of Florida, Fifth District.
September 24, 1980.
Rehearing Denied October 22, 1980.
*245 David A. Monaco of Cobb, Cole, McCoy, Abraham, Bell, Bond, Monaco & Kaney, Daytona Beach, for appellants.
Berrien Becks, Jr., of Becks & Becks, Daytona Beach, and Cynthia S. Tunnicliff, of Spector & Tunnicliff, P.A., Tallahassee, for appellees.
SHARP, Judge.
This appeal is from a final judgment in a probate proceeding upholding Louis and Edna Somogyi's oral agreement to make a joint and mutual will and invalidating Louis' will made after Edna's death. We affirm.
The evidence showed the decedent, Louis Somogyi, married his wife Edna in 1938. Edna had three children by a previous marriage. Louis treated them as his own, but he did not adopt them. In 1956, Louis and Edna agreed that upon the death of either of them, their properties would go to the survivor and then to Edna's three children. This plan was incorporated into a handwritten joint will which was subscribed by three witnesses. Although a copy of this will was not found, its contents and execution were established through witnesses. Edna died in 1967. In 1971, Louis executed a new will leaving his assets to his niece and nephew, Richard and Joanne Perko. He died in 1978.
The lower court found that Louis and Edna Somogyi entered into a binding oral agreement to make a joint and mutual will in 1956. They consummated the agreement by signing a handwritten, one-page joint will, which contained the same terms as the oral agreement. Edna and Louis repeatedly told other parties about the joint will through the date of Edna's death.
Edna's sister, Clara, testified she saw the will after it was executed. It was written out in script (probably by Louis), signed by both Louis and Edna, and witnessed by three people. It had two paragraphs. It passed all their property to the survivor and on death of the survivor, the property then owned was to pass to Edna's three daughters. Both Edna and Louis told Clara they had agreed that when both passed away the girls would receive all of their property. She recalled Edna and Louis repeated these remarks from 1956 through 1967. Clara said "I understood they had an agreement on those lines." When Edna died in 1967, and Louis again told Clara that Edna's girls would get everything when he died.
Irene Lewis witnessed the joint will in 1956. She testified that Louis and Edna read the will to her and she saw it briefly. It provided that "the survivor would take all the property and leave it to the girls." Irene and two other persons witnessed the will at Louis' and Edna's request.
Daniel Roussos, the divorced husband of Bernice, one of Edna's daughters, testified that Edna and Louis both told him about the joint will. In 1956 after having an operation for cancer, Edna told Bernice and Daniel that she and Louis made a joint will and the survivor would leave everything to the three girls. She said the will was "irrevocable" and Louis agreed. They said they would not change the will. Over the years, Louis and Edna repeated this conversation, when they were together with Daniel and also when they were alone with him.
The Reverend Schulz, Edna's minister, testified that Louis told him that he and Edna planned to devise all their property to the three girls. He said he understood Edna and Louis had a written or oral agreement to that effect. Edna mentioned the agreement to him three days before she died.
*246 Since the alleged agreement to make the 1956 joint will occurred prior to the adoption of Florida statutes 731.051 (1957), Louis and Edna were able to orally contract as to the disposition of their property by will. However, their agreement must be established by clear and convincing evidence[1] and the proof should include evidence the parties knew or understood that one of them could not unilaterally revoke the joint will.[2] In this case the evidence showed quite clearly the terms of the agreement and the parties' understanding that it was irrevocable.
In Weiss v. Storm, 126 So.2d 295 (Fla. 1st DCA 1961) the appellate court upheld a lower court's finding that there was a binding contract to make a will between the two testators. The record was much sparser than in the present case. The Storm court relied primarily upon the facts and circumstances surrounding the execution of the joint and mutual will. Like Louis and Edna, the Storms entered into a "second" marriage. One testator was concerned to see that his children by a prior marriage inherited. The will provided the survivor would take all the property and then leave it to the four children of the husband. The husband died first and the step-parent changed her will. Going on little more than those facts and the joint will itself, the Storm court held the evidence of the contract was sufficient:
The will itself, however, compels the inference that the underlying purpose of the testators was to carry out their agreement to make the will, and is supported by other testimony in the record.
.....
While the act of making a joint will, standing alone, is not in itself evidence of a contract, the terms of such will may disclose so clearly that it is the product of a contract between the parties that the will itself is sufficient evidence to establish a contract. (Citations omitted.)
126 So.2d at 297 and 298. Like Mr. Storm, Edna died relying upon the agreement and joint will. But unlike the Storm case, there were four disinterested witnesses who testified about Edna's and Louis' agreement to make the joint will and there was uncontroverted testimony as to their mutual understanding and intent that it was irrevocable. Because the record sustains the lower court's findings, we affirm.
AFFIRMED.
COBB, J., concurs.
DAUKSCH, C.J., dissents with opinion.
DAUKSCH, Chief Judge, dissenting:
I respectfully dissent. In my opinion the evidence before the trial court was legally insufficient to prove the decedents had entered into a binding agreement to never revoke their wills. The trial judge tried this case entirely upon documentary evidence and depositions, all of which we have reviewed. There is no question the will was executed. There is no question all wills are revocable and if revoked, cannot be enforced. This is not a will case, it is a contract case because it is the agreement not to revoke the will which is to be enforced. I read the same evidence the trial judge and the majority of this court read; I read the same cases cited as authority, and based upon that evidence and those cases, I would reverse. The evidence must be clear and convincing, not merely a preponderance, and it seems to me it takes a lot of proving to establish in 1980 that an oral agreement made in 1956, some 24 years earlier, lasted until 1967 when Edna died.
The estate of Louis Somogyi should be distributed in accordance with his valid Last Will and Testament.
NOTES
[1] Keith v. Culp, 111 So.2d 278 (Fla. 1st DCA 1959); Martel v. Carlson, 118 So.2d 592 (Fla. 3d DCA 1960).
[2] Hagen v. Laragione, 205 So.2d 289 (Fla. 1967).