137 Ariz. 176 (1983)
669 P.2d 609
In the Matter of the ESTATE OF William C. MOORE, deceased;
Robert D. MOORE, Personal Representative-Appellant,
v.
Audrey SCHWARTZ and Stanley Bental, Claimants-Appellees.
No. 1 CA-CIV 6108.
Court of Appeals of Arizona, Division 1, Department A.
May 3, 1983.
Rehearing Denied June 17, 1983.
Review Denied September 15, 1983.
Shultz, Worischeck & Shapiro, P.A. by Joseph H. Worischeck, Phoenix, for personal representative-appellant.
Joe S. Reynolds, P.C. by Joe S. Reynolds, Mesa, for claimants-appellees.
OPINION
CONTRERAS, Judge.
The issue presented in this appeal from an order granting a claim against an estate in probate is whether the trial court erred by finding that the testator and testatrix had agreed that their mutual and reciprocal wills were irrevocable. We conclude that the trial court did err and therefore reverse.
Before setting forth the facts, we note that our review of the evidence begins and ends with the inquiry as to whether the court had before it evidence, viewed in a light most favorable to supporting the findings, which reasonably sustains the findings. K & K Mfg., Inc. v. Union Bank, 129 Ariz. 7, 628 P.2d 44 (Ct.App. 1981). However, an appellate court has the power to set aside findings of fact which are clearly erroneous. City of Tucson v. Morgan, 13 Ariz. App. 193, 475 P.2d 285 (1970). Further, where the issue is one of interpretation of a writing, the appellate court is not bound by the trial court's findings, but may draw its own legal conclusions. E.g., Daily *177 Mines Co. v. Control Mines, Inc., 59 Ariz. 138, 124 P.2d 324 (1942).
The key facts are as follows. William C. Moore (husband) and Irma L. Moore (wife) were married on April 29, 1972. At that time, each had children by a prior marriage. During the marriage, one of the husband's sons, Robert D. Moore (son), encouraged them to have a lawyer draft their wills. However, they insisted that the son draft the wills and mailed letters to him indicating their desired testamentary plan. Only one of these letters, dated April 26, 1975, is in the record. The son used his and his wife's wills, which had been prepared by an attorney, as models and sent the first wills to the couple in 1975. However, these wills were not executed. The son continued to encourage the couple to execute wills. Again in 1979 he sent proposed wills to the couple. These wills, separate but identical, except for reciprocal terms, were executed on February 22, 1979. Each will was individually and separately executed and does not refer to the other will. The key provision of those wills for our purposes is paragraph four which provides:
FOURTH: In the event that my wife, IRMA L. MOORE [husband, William C. Moore], shall predecease me or die within sixty days after my death, or upon my own death if I shall survive her, or should we die at the same time or as a result of the same accident or disaster or during a joint last illness or under circumstances that are such that the order of our deaths cannot be ascertained with reasonable certainty then, in any of such events, I give, devise and bequeath all the rest, residue and remainder of my estate, whether real, personal, or mixed, wheresoever situate and of whatsoever the same may consist, whereof I may die seized or possessed, unless otherwise provided by me in writing, to my son, [stepson] ROBERT D. MOORE, residing at 604 Claymont Estates Drive, Ballwin, Missouri to be divided one-half the total value equally between my surviving children and one-half the total value equally between the surviving children of my wife, IRMA L. MOORE. [husband, WILLIAM C. MOORE]
(emphasis supplied).
The wife died on June 3, 1980. The husband then executed a will on June 11, 1980, which revoked all prior wills and left all his property to his children by his first marriage. The husband died on June 27, 1980.
The husband's will was offered for informal probate on July 3, 1980. The son who had drafted the will was appointed as personal representative of his estate. Appellees (the two surviving children of the deceased wife's first marriage) filed a claim against the estate. The personal representative disallowed the claim and appellees, pursuant to A.R.S. § 14-3806, filed a petition for allowance of claim.
The court issued the following findings of fact and conclusions of law relevant to the issue on appeal:
That the letter dated April 28 [sic], 1975 and signed by both parties indicated their agreement as to their testamentary scheme;
That the letter and memorandum of agreement and the reciprocal and mutual Wills, when construed together, constitute a binding contract on both parties;
That by the agreement and Wills, both parties in effect gave up their right to make new Wills;
That Irma L. Moore, in accordance with the intent of their agreement, did not change her Will prior to her death....
....
That while the Wills standing alone do not say they are irrevocable, they were made pursuant to the agreement letter and thus irrevocable;
That the scrivener of the reciprocal and mutual Wills was not a lawyer and did not clearly include the elements of the agreement set forth in the agreement letter;
That the totality of the surrounding circumstances of the April 26, 1975 letter and the reciprocal terms of the Will and the intent expressed therein amounted to *178 a clear and binding testamentary scheme and agreement between the parties;
That in effect the Wills and the letter both serve to substantiate an agreement between Irma and William;
....
NOW, THEREFORE, IT IS ORDERED allowing the claim against the estate made by Audrey Schwartz and Stanley Bentall;
FURTHER ORDERED that while the June 11, 1981 [sic] Will was the deceased's last Will, distribution under it is to be in accordance with the prior agreement made April 26, 1975 and the Wills executed February 22, 1979 in accordance with the agreement;

FURTHER ORDERED that one-half of the entire estate is to be distributed to the children of Irma and one-half of the estate to the children of William in accordance with Paragraph 4 of the mutual and reciprocal Wills.
(emphasis supplied). Appellant timely appealed from the order.
It is clear that the 1980 will was effective to revoke the 1979 will of the deceased husband. A.R.S. § 14-2507. As stated in 1 Page, Wills § 11.9, at 567 (1967):
Revocability, as has already been said, is an essential element of a will. An instrument which cannot be revoked is not a will, whatever else it may be. Accordingly, a joint, mutual or reciprocal will may be revoked as any other will may be.
See generally 97 C.J.S. Wills § 1366 (1957); 79 Am.Jur.2d Wills § 803 (1975); Annot., 17 A.L.R.4th 167 (1982). Therefore, the trial court's finding that the 1980 will was the last will and testament of the deceased husband is correct.
The difficult issue is whether the trial court erred in finding an enforceable agreement not to revoke the 1979 wills. The general rule is that where the joint or mutual will(s) contains or is accompanied by an enforceable contractual obligation, equity will not allow one of the contracting parties to avoid his obligation, but will impose a constructive trust upon his property in favor of the beneficiaries who would have received property from the joint or mutual will. E.g., Estate of Maloney v. Carsten, 178 Ind. App. 191, 381 N.E.2d 1263 (1978); Cook v. Walsh, 39 Or. App. 357, 591 P.2d 1201 (1979); Dahlgren v. Blomeen, 49 Wash.2d 47, 298 P.2d 479 (Wash. 1956). Under Arizona law, a contract to devise property may be enforceable. A.R.S. § 14-2701; Estate of Beauchamp, 115 Ariz. 219, 564 P.2d 908 (Ct.App. 1977). Under the common-law rule, an agreement not to revoke a will had to be proved by clear and convincing evidence. E.g., Estate of Somogyi v. Marosites, 389 So.2d 244 (Fla.App. 1980); Moore v. Harvey, 406 N.E.2d 354 (Ind. App. 1980); Neff v. Poboisk, 281 Minn. 475, 161 N.W.2d 823 (1968). By statute, Arizona has adopted a provision which further limits the proof of an agreement not to revoke.
A.R.S. § 14-2701. Contracts concerning succession

A contract to make a will or devise, or not to revoke a will or devise, or to die intestate, if executed after the effective date of this title, can be established only by one or more of the following:
1. Provisions of a will stating material provisions of the contract.

2. An express reference in a will to a contract and extrinsic evidence proving the terms of the contract.

3. A writing signed by the decedent evidencing the contract. The execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills.

(emphasis supplied).
In the case at bar, because it is clear that the mutual wills neither state material provisions of the contract, nor do they contain an express reference to a contract not to revoke, the only issue is whether there was "a writing signed by the decedent evidencing the contract." Arizona courts have not analyzed this provision of the statute and our research discloses no opinion on the provision by any jurisdiction which has adopted the Uniform Probate Code. Our decision, therefore, must be based on our *179 interpretation of the statute aided by prior common law as to what evidence is sufficient to constitute a contract not to revoke.
A.R.S. § 14-2701 appears to create a "mini-statute of frauds." This supplements the common-law rule that a contract to make a will must be clearly proved and certain and unambiguous in all of its terms. See generally 1 Page, Wills § 10.5 (1967). Further, the wording of A.R.S. § 14-2701 is similar to Arizona's general contract statute of frauds, A.R.S. § 44-101. A memorandum, in order to satisfy A.R.S. § 44-101, must state the terms and conditions of all the promises constituting the contract and any deficiency in this regard cannot be supplied by parol evidence. Gray v. Kohlhase, 18 Ariz. App. 368, 502 P.2d 169 (1972). Lastly, the comment to Uniform Probate Code § 2-701, from which A.R.S. § 14-2701 was taken without change, states that the purpose of the section is to tighten the methods by which contracts concerning succession are to be proved.
The trial court found that the April 26, 1975, letter from the testators to the son "indicated their agreement as to their testamentary scheme." The letter is signed by both parties and states in its entirety:
You no doubt have received Bill's letter, signed by each of us indicating his personal items and how they are to be disposed of in the event of his death. You will notice that I also signed his letter indicating that I am in agreement with the disposition of his personal items.
I also have some personal items which I wish to have disposed of as follows:
My father's gold pocket watch I wish to be given to my son Stanley.
The following items I wish to go to my children with them deciding on the final distribution:
One black, three drawer Drexel chest
One gold frame antique mirror
One antique mahogany rocking chair
Five hand made heirloom quilts
My Wallace sterling silver consisting of eight place settings plus a few attitional [sic] serving pieces
My Meito china ware consisting of eight place settings
All autographed books I may have I wish to be kept in the family.
Since Bill neglected to mention our mobile home and how it is to be handled at his death, should he predecease me, or how it is to be handled should I predecease him. Should I predecease Bill the entire contents, except for those items mentioned above, my share is to pass to him 100%. Should he predecease me then his share reverts to me 100%, except for the items mentioned in his letter to you which I signed. Should we both die in a common disaster then the home is to be sold and the proceeds are to be divided equally, 50% of such proceeds in each of our estates. This is to be the case even though one of us survives the other for 90 days. Should one of us survive the other more than 90 days then the entire mobile home and the contents thereof will go to the survivor.
Please incorporate in our wills our views in this matter as indicated in his letter recently sent to you and my views as stated in this letter.
We conclude that the letter fails to satisfy the requirement of A.R.S. § 14-2701. The letter is deficient as an agreement not to revoke because it says absolutely nothing about irrevocability of the wills. Thus, while it may show an agreement to execute mutual wills, it certainly does not show an agreement to execute irrevocable mutual wills.
Our analysis is supported by similar cases from other jurisdictions decided prior to the adoption of the Uniform Probate Code. The case most closely on point, we believe, is Oursler v. Armstrong, 10 N.Y.2d 385, 223 N.Y.S.2d 477, 179 N.E.2d 489 (1961), in which the husband and his second wife executed mutual and reciprocal wills in 1951, which provided that benefits, on the death of the survivor, would be distributed to the children from both of the husband's marriages. After the husband died in 1952, the second wife executed a will in 1955 leaving everything to the children of her marriage *180 with the deceased. The trial court imposed a constructive trust upon the wife's estate in favor of the children of the husband's first marriage. The appellate court disagreed:
Grace may have had a moral obligation to give the property which she inherited from Fulton to all four of the children, but a moral obligation alone is not enough to set the court in motion in a case of this kind [citation omitted]. The only basis on which a court can intervene is that a promise was made by Mrs. Grace Oursler not to alter or revoke her 1951 will and that by reason of her promise to that effect her husband gave and bequeathed to her what he did. The power to dispose of one's property by will is not lightly to be denied even if Judges think that the testatrix should have disposed of her estate differently. No express promise or representation was proved in writing or orally to have been made by Grace Oursler that she would not change her testamentary intent as expressed in the will which she executed contemporaneously with the will of her husband. Nor does the evidence from which such a promise is sought to be implied establish anything more than a 1951 intention on Mrs. Oursler's part to dispose of her property as she provided by her 1951 will.

(emphasis supplied). 223 N.Y.S.2d at 478-479, 179 N.E.2d at 490.
Further, the Oursler court rejected the wife's memorandum to the attorney drawing the mutual wills as to her testamentary wishes as sufficient evidence of an intent not to revoke:
Nothing in the memorandum which Grace Oursler submitted to their attorney, Mr. Ernst, amounts to a promise that she would refrain from later exercising her prerogative of revoking or altering her 1951 will to which it relates. This memorandum has no more probative force than the will itself, the substance of portions of which it incorporates. The mere inclusion of statements that her 1951 will is "as he would wish it", or that "Should he not survive me then I would wish my estate handled as he would wish matters to be handled, except that anything of my own would go directly to my own children and grandchildren, knowing that my husband's loved ones have been, are and will be well remembered", do not alter the situation. She was stating her present wish with regard to the contents of her 1951 will. The mere circumstance that she executed this will contemporaneously with the will of her husband, and that both contained similar provisions with respect to the gift over to Fulton Oursler's children in 1951, does not constitute an agreement....
Id. 223 N.Y.S.2d at 482, 179 N.E.2d at 493. See also National Bank of Austin v. Emerson, 335 Ill. App. 494, 82 N.E.2d 382 (1948); Wilson v. Gordon, 73 S.C. 155, 53 S.E. 79 (1905).
The primary case relied upon by appellee, Brewer v. Simpson, 53 Cal.2d 567, 2 Cal. Rptr. 609, 349 P.2d 289 (1960), is inapplicable for two reasons. First, the agreement there was oral, whereas oral agreements not to revoke are expressly made ineffective by A.R.S. § 14-2701. Secondly, in Brewer there was clear testimony that the parties considered their wills irrevocable. See also Estate of Somogyi. In this case, there is absolutely no evidence that the husband ever considered the agreement irrevocable. The only evidence that the wife considered the wills irrevocable is the appellant's deposition testimony that he assumed that she thought the property would pass as provided by the mutual wills and that she would not have revoked had the husband predeceased her. This evidence is certainly not sufficient to comply with A.R.S. § 14-2701. Accordingly, we conclude that appellees failed to present sufficient evidence of an agreement not to revoke the mutual wills and reverse the order of the superior court with instructions to enter an order denying appellees' claim against the estate of William C. Moore.
CORCORAN and KLEINSCHMIDT, JJ., concur.